In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4234

B. Sanfield, Incorporated,

Plaintiff-Appellant,

v.

Finlay Fine Jewelry Corporation,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 93 C 20149--Philip G. Reinhard, Judge.

Argued September 14, 2000--Decided July 10, 2001


  Before Cudahy, Easterbrook, and Ripple,
Circuit Judges.

  Easterbrook, Circuit Judge.  Finlay Fine
Jewelry, which sells inexpensive items
containing gold at kiosks in department
stores nationwide, regularly offers its
products at 50% off. Half off what?, one
may ask. A discount supposes a regular
price, and it developed in a bench trial
in this suit under sec.43(a) of the
Lanham Act, 15 U.S.C. sec.1125(a), and
related state laws, that Finlay does not
have one. Every once in a while (but
never on a Saturday or during December)
Finlay removes the "sale" signs and tries
to sell its items at higher prices, but
less than 3% of its sales are made that
way--and if a customer asks for the 50%
discount during regular-price days,
Finlay is happy to oblige. Nonetheless,
the district court found that Finlay's
50%-off and sale signs are not false or
even misleading, because customers see
through the ruse. 999 F. Supp. 1102 (N.D.
Ill. 1998). We vacated that judgment,
observing that the judge appeared to
confuse falsity with injury from the lie.
The district court had not discussed
state and federal regulations that define
phony "discounts" as misleading or false,
and thus prohibit the practice. 168 F.3d
967, 970-75 (7th Cir. 1999). We directed
the district court to evaluate Finlay's
conduct under these rules but noted that

plaintiff needs to establish injury if it is to obtain relief. Id. at 975-76.

Our opinion identified two regulations for particular attention. The first is 14 Ill. Admin. Code sec.470.220, which provides:

It is an unfair or deceptive act for a seller to compare current price with its former (regular) price for any product or service, . . . unless one of the following criteria is met:

(a) the former (regular) price is equal to or below the price(s) at which the seller made a substantial number of sales of such products in the recent regular course of its business; or

(b) the former (regular) price is equal to or below the price(s) at which the seller offered the product for a reasonably substantial period of time in the recent regular course of its business, openly and actively and in good faith, with an intent to sell the product at that price(s).

The second is 16 C.F.R. sec.233.1, issued by the Federal Trade Commission under sec.5 of the Federal Trade Commission Act, 15 U.S.C. sec.45, which courts often consult when applying the Lanham Act:

(a)  One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious--for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction--the "bargain" being advertised is a false one; the

purchaser is not receiving theunusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith--and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based. And the advertiser should scrupulously avoid any implication that a former price is a selling, not an asking price (for example, by use of such language as, "Formerly sold at $-- "), unless substantial sales at that price were actually made.

(c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50. In order subsequently to offer an unusual "bargain", Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level--$7.50--and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" This is obviously a false claim. The advertised "bargain" is not genuine.

The district court concluded that Finlay's prices are "unfair or deceptive" under the Illinois regulation because 3% of sales is not "substantial" for purposes of subsection (a), and Finlay does not "in good faith" have the "intent to sell the product" at the "regular" price for purposes of subsection (b). 76

F. Supp. 2d 868, 872 (N.D. Ill. 1999). As for the Lanham Act: Relying on the ftc's guideline, the district court concluded that Finlay's sales are deceptive, but not false, for essentially the reasons Finlay has violated the state regulation. Id. at 874. None of this did plaintiff any good, however, because the court added that it had not established either financial injury in the past or any likelihood of future business losses. Id. at 872-74. Finlay thus prevailed a second time.

Words such as "unfair," "misleading," and "deceptive" understate the gravity of Finlay's misconduct. "False" and "fraudulent" are more accurate labels. 16 C.F.R. sec.233.1(c). The "sale" price is Finlay's regular price, so the claim that it offers a 50% reduction from some higher price is false. See FTC v. Colgate-Palmolive Co., 380 U.S. 374, 387 (1965). The district court found that Finlay lacks any bona fide intent to make transactions at the higher price, which justifies the appellation "fraud." If the ftc or the Attorney General of Illinois were to bring an action against Finlay, the court would issue an injunction in a trice. But B. Sanfield, Inc., the plaintiff in this case, is not a public prosecutor. It is a jewelry store, one of Finlay's rivals in Rockford, Illinois, and to prevail it must show injury, as we observed the first time this case was here.

Sanfield offered two theories of financial loss. One was that, in order to counter Finlay's deceit, Sanfield had to place additional advertisements to inform the public that absolute prices for jewelry, and not percentage discounts from phantom prices, are what matter. This is a plausible theory, but one the district judge thought unsubstantiated. Sanfield did not introduce copies of these advertisements, bills for them, or any other documentary support for its claim. Although Sanfield's ceo testified that such an advertising campaign had been run, the district judge found this testimony not credible. 76 F. Supp. 2d at 873. That finding is not clearly erroneous. See Anderson v. Bessemer City, 470 U.S. 564, 570 (1985). Sanfield's other contention was that it must have lost some sales to Finlay because some customers demanded that Sanfield's clerks

discount its merchandise by 50% and, when they would not do so, left the store. The district judge found this evidence insufficient because Sanfield could not establish a causal connection between these episodes and Finlay's promotions. 76 F. Supp. 2d at 873. Many people who walk through Sanfield's door would fish for discounts even if Finlay were to change its business methods. What the district judge sought was some evidence that Sanfield's sales were influenced by Finlay's practices. For example, did Sanfield's sales rise on weekdays, when Finlay was most likely to take down its "sale" signs? The district judge observed that Sanfield's sales rose during the months covered by its claims and that attributing any particular lost business to Finlay is difficult: "Finlay and Sanfield did not compete exclusively with each other; rather, there were numerous other competitors for sales of the gold jewelry at issue." Ibid. If these other rivals sold for less than Finlay, then they would be the likely source of diverted business; yet Sanfield did not put in the record a comparison of jewelers' prices in Rockford.

Sanfield's inability to upset the district court's conclusion that it suffered no loss drives it to argue that proof of loss is unnecessary. If Finlay's promotions were actually false (as we believe), then actual injury is simply unnecessary, Sanfield contends. It relies for this proposition on cases such as United Industries Corp. v. Clorox Co., 140 F.3d 1175 (8th Cir. 1998), and Coca-Cola Co. v. Tropicana Products, Inc., 690 F.2d 312, 317 (2d Cir. 1982), which indeed say that when an advertisement is false a court may grant injunctive relief without proof that the ad deceived any particular member of the buying public. If Sanfield reads these cases aright, then these decisions can't be squared with Article III of the Constitution, which makes injury in fact an essential component of a case or controversy. See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 107-08 (1998); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-62 (1992); Lujan v. National Wildlife Federation, 497 U.S. 871, 883-89 (1990). Fortunately, Sanfield has misunderstood the decisions, which do not transgress Article III.

The circuits whose opinions Sanfield cites do not quarrel with the need to prove past or potential injury. What Clorox said is that a private plaintiff must show, among other things, that it "has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products." 140 F.3d at 1180. A plaintiff unable to show actual injury in the past may be able to demonstrate impending injury; and, because "likely" is the most anyone can say about future events, prospective relief is available to reduce the probability of loss. Every other circuit that has addressed the question takes the same view. See, e.g., Hutchinson v. Pfiel, 211 F.3d 515, 522 (10th Cir. 2000); Balance Dynamics Corp. v. Schmitt Industries, Inc., 204 F.2d 683, 691-92 (6th Cir. 2000); Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d 186, 190 (2d Cir. 1980). Cf. August Storck K.G. v. Nabisco, Inc., 59 F.3d 616, 618-19 (7th Cir. 1995) (a "likelihood" is enough to support relief; a "possibility" is not, because even the very improbable is "possible").

Likelihood of future injury is no less a "fact" than likelihood of confusion, another issue that often comes up in Lanham Act cases, and appellate review is correspondingly deferential. See Scandia Down Co. v. Euroquilt, Inc., 772 F.2d 1423, 1427-28 (7th Cir. 1985); Sunmark, Inc. v. Ocean Spray Cranberries, Inc., 64 F.3d 1055, 1060 (7th Cir. 1995). The district court believed that Sanfield is no more likely to suffer loss in the future than in the past--that the past is the best guide to what will happen in the future if Finlay does not change its business methods. Sanfield does not argue otherwise; indeed it produced no evidence of likely future harm and argues only that it need not do so. Sanfield fancies itself a private attorney general, but it has not been appointed to that office, and as a private litigant must show injury, which it did not.

Affirmed