860 A.2d 435

HENRY F. FURST, PLAINTIFF–RESPONDENT, v. EINSTEIN MOOMJY, INC., THE CARPET DEPARTMENT STORE, AND WALTER MOOMJY, DEFENDANTS–APPELLANTS.

Argued September 13, 2004—Decided November 15, 2004.

*Bruce H. Nagel,* argued the cause for appellants (*Nagel Rice & Mazie,* attorneys).

*Leon Grauer,* argued the cause for respondent.

Justice ALBIN delivered the opinion of the Court.

In this case, defendants, a carpet department store and its president, sold plaintiff-customer a defective carpet at a warehouse clearance sale in violation of the Consumer Fraud Act,

*N.J.S.A.* 56:8–1 to –20. The trial court determined that plaintiff's "ascertainable loss" was the replacement value of the carpet, not the purchase price. The court, however, found that plaintiff did not offer sufficient evidence establishing replacement value to warrant a jury trial and, therefore, the ascertainable loss was simply the price paid by plaintiff. Although the Appellate Division agreed that replacement value was the proper measure of damages, it held that the "regular price" on the marked-down sales sticker was proof sufficient to justify a damages trial. Last, the Appellate Division found that the trial court did not adequately state its reasons for its award of attorneys' fees to plaintiff.

We affirm the Appellate Division decision. Plaintiff's ascertainable loss in this consumer fraud action is the carpet's replacement value. Moreover, at a new damages trial, plaintiff will be entitled to a rebuttable presumption that the regular price on the marked-down sales sticker represents the carpet's replacement value. On remand, at a new hearing to determine plaintiff's reasonable attorneys' fees, the trial court will give its reasons for its fee award with reference to the governing case law.

I.

The essential facts are not in dispute. Defendant Walter Moomjy is the president of defendant Einstein–Moomjy, Inc., a large retail distributor of carpets with stores located in Paramus, North Plainfield, Whippany, and Manhattan. In August 1999, at an annual clearance sale held by Einstein–Moomjy, plaintiff Henry F. Furst purchased five remnant carpets for his home for $10,139.68. After delivery, plaintiff discovered that two of those carpets—the "Jungle Fever Antelope" and the "Mystery Ivory"— were defective. Only the Mystery Ivory is of concern to us in this appeal.

Attached to the Mystery Ivory carpet at the time of its sale to plaintiff was a tag containing the following information:

The Back Yd.

Einstein Moomjy, The Carpet Department Store
REMNANT

REDUCED FOR CLEARANCE

SIZE:[1] 11'4" x 31'
REGULAR PRICE $5,775–

SALE PRICE

$1,499–

QUALITY: Mystery

COLOR: Ivory

Fibre: Wool

Sale

1,199

When the Mystery Ivory carpet was delivered to his home, plaintiff noticed that the carpet was damaged and smaller than the size indicated on the sales invoice. Plaintiff complained about the condition and size of the carpet to defendants, who offered either a refund of the sale price of $1,199.00 or a similar carpet at an additional price. Defendants claimed that the Mystery Ivory carpet was a high quality "Ireloom" white wool carpet that had been tagged mistakenly with the wrong sale price. Plaintiff demanded that defendants comply with the warranty on the back of the sales invoice. The invoice promised that if the carpets

---

[1] The description of the size of the carpet on the invoice differed from that on the sales tag.

purchased were not delivered by the scheduled delivery date, plaintiff had the choice of canceling the "order with a prompt full refund" or "accepting delivery at a specific later date." Plaintiff insisted on delivery of an undamaged Ireloom carpet at the size he ordered and at the price he paid.

When defendants refused to replace the Ireloom carpet at that price, plaintiff filed a seven-count complaint alleging, among other things, violations of the New Jersey Consumer Fraud Act, *N.J.S.A.* 56:8–1 to –20, fraud, and breach of warranty in the sale of the Jungle Fever Antelope and Ireloom carpets. Although the parties negotiated a settlement with regard to the Antelope carpet, they continued to litigate their differences over the Ireloom carpet.

The trial court entered summary judgment on liability in favor of plaintiff, finding that defendants violated the Consumer Fraud Act in the sale of the Ireloom carpet. Defendants do not contest that ruling. Next, the court determined that the "ascertainable loss" suffered by plaintiff under the Act was the benefit of his bargain, i.e., the fair market or replacement value of the carpet. Before the impaneling of a jury to decide damages, defendants moved to restrict the proofs plaintiff could offer to establish the carpet's replacement value. Plaintiff stated that he intended to prove market value by introducing the carpet's sales tag, which displayed the unmarked-down "regular price," and by calling as witnesses his interior decorator and defendant Moomjy.

Defendants argued that the regular price on the sales sticker neither suggested nor established replacement value, and therefore did not satisfy the basic standard of relevance. Defendants also moved to bar the testimony of the interior decorator because plaintiff had neither listed that witness as an expert nor provided an expert's report in discovery. Defendants further claimed that defendant Moomjy could not be compelled to give opinion testimony on behalf of plaintiff to show the market value of the carpet.[2]

---

[2] We note that, based on the record before us, defendant Moomjy was never asked in deposition the market value of the carpet, although Moomjy did indicate that his wholesale cost was greater than the purchase price.

The court granted defendants' motion to bar the evidence plaintiff offered to prove market value. In light of plaintiff's inability to prove replacement value, the trial court limited damages to the purchase price of the carpet, $1,199.00, trebled under the Act. The trial court denied defendants' oral request for a plenary hearing on plaintiff's attorney-fee application and awarded plaintiff attorneys' fees totaling $28,050.00 plus $1,055.55 in costs.

Defendants appealed, contending that the trial court erred by awarding excessive attorneys' fees and by failing to conduct a plenary hearing to determine the reasonableness of those fees. Plaintiff cross-appealed, arguing that the court erred by barring his proofs of replacement value. The Appellate Division agreed with the trial court that the ascertainable loss was the replacement cost of the Ireloom carpet. The appellate panel, however, parted with the trial court by finding that the sales tag was sufficient evidence of replacement value to raise a triable issue. In particular, the panel held that the sales tag could be "used as evidence of the piece's market value without the need of producing expert testimony." The panel also concluded that the trial court did not properly explain its reasons or reference the standards set forth in *Rendine v. Pantzer*, 141 *N.J.* 292, 661 *A.*2d 1202 (1995), in awarding attorneys' fees in the amount requested by plaintiff. The panel ordered a remand, but found no need for a plenary hearing and stated that after the parties submitted detailed certifications they could present their positions in court. We granted defendants' petition for certification. *Furst v. Einstein Moomjy, Inc.*, 179 *N.J.* 372, 845 *A.*2d 1254 (2004).

## II.

We agree with the trial court and Appellate Division that when a merchant violates the Consumer Fraud Act by delivering defective goods and then refusing to provide conforming goods, a customer's ascertainable loss is the replacement value of those goods.

The Legislature passed the Consumer Fraud Act in 1960 to give consumers relief from fraudulent practices in the marketplace and to deter merchants from employing those practices. *Cox v. Sears Roebuck & Co.*, 138 *N.J.* 2, 21, 647 *A.*2d 454, 463–64 (1994). Today, the Act makes it unlawful for a person to use "any unconscionable commercial practice, deception, fraud, false pretense, false promise, [or] misrepresentation . . . in connection with the sale or advertisement of any merchandise. . . ." *N.J.S.A.* 56:8–2. The Act protects against knowing misrepresentations, omissions of material fact, and violations of administrative regulations, whether or not the merchant acts in bad faith. *N.J.S.A.* 56:8–2; *Cox, supra*, 138 *N.J.* at 16–17, 647 *A.*2d at 463.

█ It is a "deceptive practice" for a merchant to deliver household furnishings "that are damaged or that are not the exact size, style, color or condition indicated on the sales contract," and for that merchant to refuse to offer the consumer the choice of a refund or delivery at a later date. *N.J.A.C.* 13:45A–5.1(a), (b), (d), (e). These defendants offered plaintiff the option of receiving a refund or the option of receiving conforming goods at an additional cost. That was a deceptive practice in violation of *N.J.A.C.* 13:45A–5.1.

In quantifying plaintiff's damages, we must determine his ascertainable loss. We neither can ascribe a plain meaning to the term ascertainable loss, nor find legislative history that sheds direct light on those words. *See Brodsky v. Grinnell Haulers, Inc.*, 181 *N.J.* 102, 109–10, 853 *A.*2d 940, 944–45 (2004) ("To divine [legislative] intent, we first look to the plain meaning of the words of the statute. . . . When faced with an ambiguous statute, we also rely on legislative history to gain further insight into the probable intent of the Legislature.") (citations omitted). We must look to the clear objectives of the Act itself, informed by well-established remedies available in a typical breach-of-contract case, to find the meaning of ascertainable loss.

█ The Consumer Fraud Act is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding

the public. *Cox, supra,* 138 *N.J.* at 15–16, 647 *A.*2d at 460–61; *Barry v. Arrow Pontiac,* 100 *N.J.* 57, 69, 494 *A.*2d 804, 811 (1985). The Act protects consumers from more than just "shifty, fast-talking and deceptive merchant[s]" and "sharp practices and dealings...." *Cox, supra,* 138 *N.J.* at 16, 647 *A.*2d at 461 (internal quotations omitted). It also protects consumers from unfair practices "even when a merchant acts in good faith." *Ibid.* In furtherance of the Act's overarching remedial purpose, a consumer may file a private cause of action against an offending merchant whenever that consumer suffers an ascertainable loss as a result of a violation of the Act. *N.J.S.A.* 56:8–19;[3] *Weinberg v. Sprint Corp.,* 173 *N.J.* 233, 249, 801 *A.*2d 281, 291 (2002) (citing *Meshinsky v. Nichols Yacht Sales, Inc.,* 110 *N.J.* 464, 473, 541 *A.*2d 1063, 1067 (1988)).

Among the equitable and legal remedies available against violators of the Act are treble damages, reasonable attorneys fees, and costs of suit. *N.J.S.A.* 56:8–19. The purpose of those remedies is not only to make whole the victim's loss, but also to punish the wrongdoer and to deter others from engaging in similar fraudulent practices. *Cox, supra,* 138 *N.J.* at 21, 647 *A.*2d at 463. Plaintiff submits that he cannot be made whole unless he receives the benefit of his bargain. He presents the simple proposition that if the purchase price of a carpet is one thousand dollars and the market value of that carpet is five thousand dollars, he will be unable to find a comparable replacement in the marketplace for

---

[3] *N.J.S.A.* 56:8–19 provides that

[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

his purchase price. In that respect, the purchase price neither represents the true value of the carpet nor plaintiff's ascertainable loss.

■ Our analysis is informed by basic principles of contract law. "In an ordinary breach-of-contract case, the function of damages is simply to make the injured party whole...." *Ibid.* Under the Uniform Commercial Code, as adopted by New Jersey, the remedy for a buyer who has accepted defective goods is the difference between the "value of the goods accepted and the value they would have had if they had been as warranted...." [4] *N.J.S.A.* 12A:2–714(2); *see also Kearney & Trecker Corp. v. Master Engraving Co.,* 107 *N.J.* 584, 594, 527 *A.*2d 429, 434–35 (1987) (asserting that "commonly-applied formula" in breach-of-warranty cases is difference between value of goods accepted and value of goods if delivered as promised); *D'Ercole Sales, Inc. v. Fruehauf Corp.,* 206 *N.J.Super.* 11, 21, 501 *A.*2d 990, 995 (App.Div.1985) (affirming reduction of damages under Consumer Fraud Act for value of defective goods received). Similarly, in a breach-of-contract case, the innocent party must be given the " 'benefit of his bargain' " and placed in " 'as good a position as he would have been in had the contract been performed.' " *Scully v. US WATS, Inc.,* 238 *F.*3d 497, 512 (3d Cir.2001) (quoting *Restatement (Second) of Contracts* § 344(a) (1981)). Indeed, under the Restatement, the innocent party has a right to damages "based on his expectation interest as measured by ... the loss in the value to him" caused by the breaching party's nonperformance. *Restatement (Second) of Contracts* at § 347(a).

If we apply those fundamental principles of contract law, we are led inexorably to the conclusion that replacement cost is the proper measure of damages sustained by the consumer in this case. In light of the Legislature's clear intent, it would be

---

[4] In this case, there is nothing to suggest that the defective carpet was retained.

incongruous to provide consumers with a form of damages less than what is available in an ordinary breach-of-contract case. The "expectation interest" of the consumer who purchases merchandise at a discount is the benefit of the bargain. The statute cannot be construed to allow an offending merchant to benefit from his own deception. The merchant who promises to deliver a product at a particular price must, at the option of the consumer, either deliver the product or render its replacement value. *N.J.A.C.* 13:45A–5.1. The merchant cannot escape his promise to the consumer by offering a mere refund of the purchase price or a replacement at a cost higher than the purchase price.

■ Defendants argue that granting plaintiff damages in the amount of his replacement cost would amount to a "windfall," particularly when trebled under the Act. The remedy of treble damages under the Act, however, was not intended to make the defrauded consumer whole, but to punish the wrongdoer and to deter others from engaging in unfair and deceptive commercial practices. *See Cox, supra,* 138 *N.J.* at 21, 647 *A.*2d at 463; *N.J.S.A.* 56:8–19. In keeping with the Legislature's remedial objectives, we conclude that a consumer who suffers an ascertainable loss is entitled to the benefit of the bargain—in this case, the replacement value of the carpet—trebled under the Act.

### III.

■ We next address whether plaintiff proffered sufficient evidence of the replacement value of the carpet to warrant a damages trial. The trial court determined that replacement value had to be proved through expert testimony and excluded the use of the unmarked-down regular price on the sales tag as evidence of the market value of the Ireloom carpet. The court also barred testimony from plaintiff's interior decorator regarding her investigation of market prices and testimony from defendant Moomjy regarding the market value of the Ireloom carpet. In the absence

of evidence of replacement value,[5] the court awarded plaintiff his purchase price, trebled under the Act.

In its opinion, the Appellate Division did not address the trial court's ruling prohibiting the testimony of the interior decorator and defendant Moomjy, although those issues were raised by plaintiff on appeal. The panel remanded for a trial on damages solely on the basis that the " 'price tag' showing the unreduced value of the [Ireloom carpet] can be used as evidence of the piece's market value without the need of producing expert testimony." Defendants challenged that appellate ruling in their petition for certification. That is the only issue concerning proof of replacement value before us.

"Relevant evidence" is "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." *N.J.R.E.* 401;[6] *see also State v. Wilson,* 135 *N.J.* 4, 13, 637 *A*.2d 1237, 1241 (1994) (noting that probative value of evidence is "tendency of the evidence to establish the proposition that it is offered to prove"). In evaluating the probative value of evidence, our inquiry focuses on "the logical connection between the proffered evidence and a fact in issue." *State v. Hutchins,* 241 *N.J.Super.* 353, 358, 575 *A*.2d 35, 38 (App.Div.1990). Here, the merchant's sales tag was admissible as a statement of a party-opponent, *N.J.R.E.* 803(b)(1) and *N.J.R.E.* 803(b)(4),[7] provided it contained information relevant to the case.

---

[5] In this opinion, we make no distinction between market and replacement value. We have defined fair market value as " 'the price at which the property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of relevant facts.' " *Ramirez v. Autosport,* 88 *N.J.* 277, 292, 440 *A*.2d 1345 (1982) (quoting *In re Estate of Romnes,* 79 *N.J.* 139, 144, 398 A.2d 543, 545 (1978)).

[6] We note that unless otherwise provided by rule or law, "all relevant evidence is admissible." *N.J.R.E.* 402.

[7] *N.J.R.E.* 803(b)(1) provides that "[a] statement offered against a party which is ... the party's own statement, made either in an individual or in a representa-

The sales tag advertised a carpet "reduced for clearance" and contained the following information: the quality, color, and fiber of the carpet; its size; and its regular price ($5,775), its pre-marked-down price ($1,499), and its final marked-down price ($1,199). The description of the damaged carpet as Mystery Ivory Wool is relevant for the purpose of identifying the item for replacement value. The final marked-down price—the price paid for the carpet—is relevant as one possible measure of damages. We also find that the regular price on the sales sticker is evidence that tends to establish replacement value.

We begin by ascribing to the term "regular price" its customary commercial meaning. What defendants have denominated as the regular price on the sales tag is referred to as the "former" price under federal and state regulations. A product's former (or regular) price is the price at which the merchant has " 'openly and actively' " tendered the product for sale, " 'for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith—and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.' " *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 258 *F*.3d 578, 580 (7th Cir.2001) (quoting 16 *C.F.R.* § 233.1).[8] Moreover, the Division of Consumer Affairs,

---

tive capacity" is not excluded by the hearsay rule. *N.J.R.E.* 803(b)(4) provides that "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" is not excluded by the hearsay rule.

[8] A " '[f]ictitious former price' means an artificially inflated price for an item or items of merchandise established for the purpose of enabling the advertiser to subsequently offer the item or items at a large reduction." *N.J.A.C.* 13:45A–9.1. A merchant makes a fictitious price comparison when the merchant uses

a price at which he never offered the article at all; ... [or] feature[s] a price which was not used in the regular course of his business, or which was not used in the recent past but at some remote period in the past, without making disclosure of that fact; ... [or employs] a price that was not openly offered to the public, or that was not maintained for a reasonable length of time, but was immediately reduced.
[16 *C.F.R.* § 233.1.]

which has statutory authority to enforce the Consumer Fraud Act, defines former price in "a price reduction advertisement" as an advertised price "for an item of merchandise that has been offered or sold by the advertiser in his or her trade area or competitors in their trade area." *N.J.A.C.* 13:45A–9.1. The point of both the federal and state regulations is that the regular price must bear some relationship to what the retailer considered to be the market value of the merchandise " 'in the recent, regular course of his business.' " *B. Sanfield, supra,* 258 *F.*3d at 580 (quoting 16 *C.F.R.* § 233.1).

In deciding that the regular price on the Ireloom carpet sales sticker is evidence of replacement value, we look to the reality of the marketplace and the role that advertising plays in inducing consumers to purchase products. Merchants understand that one of the central tenets of market psychology is that consumers do not want to pay full retail price and are always in search of the best deal. As commentators have noted,

> [t]he use of an advertised reference price with an advertised sale price focuses consumers' attention on the difference between the two prices. This leads to a perception of greater value concerning the purchase of the product. In addition, consumers are less likely to search other retail locations and have an increased likelihood of purchase.
>
> [Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention,* 55 *J. Bus. Res.* 775, 775 (2002).]

Merchants draw consumers into their stores by holding sales events—such as warehouse clearance days—that promise the regular value of a product at a reduced price.

Sales stickers with slashed prices play to the consumers' commonsense desire to buy at a reduced price rather than the regular price. Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review,* 17 *J. Pub. Pol'y & Marketing* 257, 257 (1998) ("Advertisers often appeal to [the] desire to 'get a deal' by comparing the offering price (e.g., sale price) with some higher reference price (e.g., regular price), thereby making the offered price more attractive."). The consumer, surely, would not think that he is getting a bargain if the product he purchases

is worth no more than the price he paid. Merchants commit no wrong by profiting from consumers' craving to shop smartly, provided they do not place the value of the products they sell in a false light. *N.J.A.C.* 13:45A–9.2(a)(9) (making unlawful "false or misleading representations of facts concerning ... amounts of price reductions"); *see also* Compeau & Grewal, *supra*, 17 *J. Pub. Pol'y & Marketing* at 257 (observing that "comparative price advertising is a powerful advertising tool, with a strong opportunity for deception, that requires careful management and monitoring").

In this case, the sales tag represented to plaintiff that the retailer was giving plaintiff a "deal," a carpet at a price greatly reduced from the advertised regular price. The law places on plaintiff the burden of proving damages—the replacement value of the carpet. We must determine the weight to be accorded the regular price on the sales sticker in proving replacement value.

In deciding that issue, we cannot disregard the vast disparity in economic power and industry knowledge between retailers and an ordinary consumer. The ordinary consumer may be the victim of a deceptive marketing practice that involves a relatively minor loss. The consumer will not have easy access to proof of replacement value without retaining an expert witness or a retailer in the industry to testify to the market value of the merchandise. Marshalling such proofs can be an onerous and expensive undertaking. On the other hand, retailers—such as defendants in this case who are in the business of selling carpets—can be expected to know the value of the merchandise they place for sale to the public. In such circumstances, it is only fair to place the burden on the retailer, whose use of the sales sticker induced the purchase, to come forward with contrary evidence of replacement value. We will not require an overly burdensome procedure for a consumer to place before the trier of fact the issue of replacement value.

The strong remedial policy undergirding the Consumer Fraud Act leads us to conclude that the regular price advertised on the sales sticker is a relevant benchmark from which to impute

replacement value. *See Cox, supra,* 138 *N.J.* at 15, 647 *A.2d* at 460–61. Accordingly, there will be a rebuttable presumption that the regular price on the sales sticker is the replacement value of the carpet. The burden then will shift to defendants to produce alternative evidence of replacement value. If defendants present such evidence, the presumption concerning replacement value will disappear, and the trier of fact will decide the issue based on all the evidence with the burden of persuasion resting with plaintiff. If defendants present no evidence of replacement value to refute plaintiff's *prima facie* case, judgment will be entered in plaintiff's favor.[9] Plaintiff is not restricted in the presentation of his proofs to the sales sticker and may call witnesses and produce other evidence to prove replacement value.[10] We caution plaintiff that the regular price is only evidence—not conclusive proof—of replacement value. In shifting the burden of production of evidence to defendants, we acknowledge that the retailer is in a superior position to present proof of the product's market value. In keeping the burden of persuasion with plaintiff, we adhere to the traditional manner in which damages must be proven.

---

[9] The paradigm presented here is consistent with the way a presumption works in *N.J.R.E.* 301. That rule provides as follows:

> Except as otherwise provided in Rule 303 or by other law, a presumption discharges the burden of producing evidence as to a fact (the presumed fact) when another fact (the basic fact) has been established.
>
> If evidence is introduced tending to disprove the presumed fact, the issue shall be submitted to the trier of fact for determination unless the evidence is such that reasonable persons would not differ as to the existence or nonexistence of the presumed fact. If no evidence tending to disprove the presumed fact is presented, the presumed fact shall be deemed established if the basic fact is found or otherwise established. The burden of persuasion as to the proof or disproof of the presumed fact does not shift to the party against whom the presumption is directed unless otherwise required by law. Nothing in this rule shall preclude the judge from commenting on inferences that may be drawn from the evidence.
>
> [*N.J.R.E.* 301.]

[10] Plaintiff is not relieved of his obligation to comply with the rules of civil practice, including the rules of discovery and evidence. Any decision regarding those matters is left to the sound discretion of the trial court.

We note one additional policy basis in support of a rebuttable presumption that regular price is the equivalent of replacement value. We are mindful that misleading advertising is a deceptive commercial practice. *Fenwick v. Kay Am. Jeep, Inc.*, 72 *N.J.* 372, 378, 371 *A.*2d 13, 16 (1977). It is a deceptive practice under the Act for a retailer to artificially inflate the price for an item of merchandise for the purpose of advertising the item at a large reduction. *N.J.A.C.* 13:45A–9.2(a)(9). In this case, there is a significant disparity between the regular price ($5,775) and the sale price ($1,199). Plaintiff has not argued that the regular price advertised by defendants was an inflated number, and we do not suggest that defendants have done so here. However, we believe that an unscrupulous merchant might pause before inflating a regular price on a sales sticker if that price was evidence of replacement value. Therefore, the rebuttable presumption that regular price equals replacement value may deter some merchants who might otherwise inflate the regular price to make the sale more appealing to the public. *See Cox, supra*, 138 *N.J.* at 21, 647 *A.*2d at 463 (observing that "the Act serves as a deterrent").

We remand to the Appellate Division the remaining evidential issues raised by plaintiff in his direct appeal that were not addressed in the panel's opinion. After that ruling, a trial on damages will proceed consistent with the procedures outlined above.

## IV.

### A.

We now consider defendants' challenge to the trial court's award of reasonable attorneys' fees in the amount of $28,050.00 and costs in the amount of $1,055.55. In granting plaintiff's attorney-fee application, the court simply relied on the "reasons advanced" by plaintiff in his certification and in argument. We cannot tell on this record whether the trial court applied the factors set forth in *Rendine, supra*, that govern an award of

counsel fees in a fee-shifting statute. We agree with the Appellate Division that a trial court must analyze the *Rendine* factors in determining an award of reasonable counsel fees and then must state its reasons on the record for awarding a particular fee. *R.* 1:7–4(a) (requiring trial court to "find the facts and state its conclusion of law thereon in all actions tried without a jury").

A prevailing plaintiff in an action under the Consumer Fraud Act is entitled to reasonable attorneys' fees, filing fees, and costs. *N.J.S.A.* 56:8–19; *Cox, supra,* 138 *N.J.* at 24, 647 *A.*2d at 465; *Wanetick v. Gateway Mitsubishi,* 163 *N.J.* 484, 490, 750 *A.*2d 79, 82 (2000). Defendants do not contest that the statute grants plaintiff the right to an award of counsel fees; rather they claim that the award was excessive and thus unreasonable.

In a consumer fraud action, the Legislature has recognized that the right of access to the courts is meaningless unless the injured party has the resources to launch a suit. Fee-shifting provides an incentive to competent counsel to undertake high-risk cases and to represent victims of fraud who suffer relatively minor losses. *See Coleman v. Fiore Bros.,* 113 *N.J.* 594, 597, 552 *A.*2d 141, 142–43 (1989) (explaining that fee-shifting is Legislature's attempt to provide equal access to courts by encouraging private enforcement of law); *Rendine, supra,* 141 *N.J.* at 322–23, 661 *A.*2d at 1219–20.

In *Rendine, supra,* a case arising under the New Jersey Law Against Discrimination, *N.J.S.A.* 10:5–1 to –42, we set down standards governing the award of attorneys' fees under a fee-shifting statute. The starting point in awarding attorneys' fees is the determination of the "lodestar," which equals the "number of hours reasonably expended multiplied by a reasonable hourly rate." *Rendine, supra,* 141 *N.J.* at 335, 661 *A.*2d at 1226; *see R.* 4:42–9(b) (stating that application for counsel fees shall be supported by affidavit addressing pertinent factors, including those in *RPC* 1.5(a), and shall include amount of fees and disbursements sought). *Rule of Professional Conduct* 1.5(a) commands that "[a] lawyer's fee shall be reasonable" in all cases, not just fee-shifting

cases. *RPC* 1.5(a) catalogues the "factors to be considered in determining the reasonableness of a fee," which include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

Those factors must inform the calculation of the reasonableness of a fee award in this and every case.

 In setting the lodestar, a trial court first must determine the reasonableness of the rates proposed by prevailing counsel in support of the fee application. *Rendine, supra,* 141 *N.J.* at 335, 661 *A.*2d at 1226. In that regard, the court should evaluate the rate of the prevailing attorney in comparison to rates " 'for similar services by lawyers of reasonably comparable skill, experience, and reputation' " in the community. *Id.* at 337, 661 *A.*2d at 1226 (quoting *Rode v. Dellarciprete,* 892 *F.*2d 1177, 1183 (3d Cir.1990)). Second, a trial court must determine whether the time expended in pursuit of the "interests to be vindicated," the "underlying statutory objectives," and recoverable damages is equivalent to the time "competent counsel reasonably would have expended to achieve a comparable result . . . ." *Id.* at 336, 661 *A.*2d at 1227. The court must not include excessive and unnecessary hours spent on the case in calculating the lodestar. *Id.* at 335–36, 661 *A.*2d at 1226–27 (noting that it is not " 'time *actually* expended' " but time " '*reasonably* expended' " that matters and that " '[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary*' ") (quoting *Copeland v. Marshall,* 641 *F.*2d 880, 891 (D.C.Cir.1980)). Whether the hours the prevailing attorney devoted to any part of a case are excessive

ultimately requires a consideration of what is reasonable under the circumstances.

Third, a trial court should decrease the lodestar if the prevailing party achieved limited success in relation to the relief he had sought. *Id.* at 336, 661 *A.2d* at 1227; *see also Hensley v. Eckerhart,* 461 *U.S.* 424, 436–37, 103 *S.Ct.* 1933, 1941, 76 *L.Ed.*2d 40, 52 (1983) (noting that important factor is "degree of success obtained"). However, there need not be proportionality between the damages recovered and the attorney-fee award itself. *Rendine, supra,* 141 *N.J.* at 336, 661 *A.2d* at 1227 (adopting Justice Brennan's reasoning in his plurality opinion in *City of Riverside v. Rivera,* 477 *U.S.* 561, 106 *S.Ct.* 2686, 91 *L.Ed.*2d 466 (1986)); *see also Szczepanski v. Newcomb Med. Ctr.,* 141 *N.J.* 346, 366, 661 *A.2d* 1232, 1243 (1995) (declining to "construe New Jersey's fee-shifting statutes to require proportionality between damages recovered and counsel-fee awards even if the litigation ... vindicates no rights other than those of the plaintiff"). Fourth, when the prevailing attorney has entered into a contingent-fee arrangement, a trial court should decide whether that attorney is entitled to a fee enhancement. *Rendine, supra,* 141 *N.J.* at 338, 661 *A.2d* at 1228. In determining and calculating a fee enhancement, the court should consider the result achieved, the risks involved, and the relative likelihood of success in the undertaking. *Id.* at 340–41, 661 *A.2d* at 1229 (noting that " 'the "legal" risks facing a case may be so apparent and significant that they will constitute an economic disincentive independent of that created by the basic contingency in payment' ") (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 *U.S.* 711, 751, 107 *S.Ct.* 3078, 3100, 97 *L.Ed.*2d 585, 614 (1987) (Blackmun, J., dissenting)).[11]

Defendants argue that the award of attorneys' fees was excessively disproportionate to the damages awarded to plaintiff. The

---

[11] For greater detail on the range and calculation of enhancements, see *Rendine, supra,* 141 *N.J.* at 337–45, 661 *A.2d* at 1227–32.

Legislature undoubtedly was aware that in consumer fraud cases involving minor losses, attorneys' fees frequently would exceed the damages suffered. Nevertheless, the Legislature intended plaintiffs to have access to the court system to pursue relatively small claims against deceptive retailers. In that respect, the provision for attorneys' fees is one of the deterrent aspects of the legislation, and therefore, fraudulent retailers should beware.

The trial court failed to acknowledge explicitly the principles outlined here and more fully developed in *Rendine, supra,* in rendering its attorney-fee award. The court relied merely on the representations in plaintiff's attorney-fee petition without further analysis or explanation. Therefore, we vacate the award of attorneys' fees and remand for proceedings in accordance with this opinion.

## B.

We also must determine whether the trial court abused its discretion in denying defendants' request to challenge the reasonableness of plaintiff's attorneys' fees in a plenary hearing. The Appellate Division rejected defendants' contention that a plenary hearing was required. Instead, the panel concluded that the trial court could determine the lodestar and such issues as fee enhancement by a review of detailed certifications and argument by counsel, without the need to hear from witnesses. We hold to the commonsense position that a plenary hearing should be conducted only when the certifications of counsel raise material factual disputes that can be resolved solely by the taking of testimony. We expect that such hearings will be a rare, not a routine, occurrence.

We strongly discourage the use of an attorney-fee application as an invitation to become mired in a second round of litigation. *Blum v. Witco Chem. Corp.,* 829 *F.*2d 367, 377 (3d Cir.1987) (warning that "the inquiry into the proper fee should not 'assume massive proportions ... dwarfing the case in chief'") (quoting *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard*

*Sanitary Corp.,* 540 *F.*2d 102, 116 (3d Cir.1976) (en banc)); *Jaco-bitti v. Jacobitti,* 263 *N.J.Super.* 608, 619, 623 *A.*2d 794, 799 (App.Div.1993) (finding no need for "extensive and time-wasting hearing" on attorneys' fees in matrimonial action). We invest our trial courts with wide latitude in resolving attorney-fee applications, and we expect that appellate courts will not disturb the decision to deny a plenary hearing unless there is a "clear abuse of discretion." *Rendine, supra,* 141 *N.J.* at 317, 661 *A.*2d at 1217. An attorney's application should be sufficiently detailed to allow a trial court to determine the nature of the work performed and by whom, as well as the reasonableness of the hourly rate and the hours expended. *Id.* at 336–37, 661 *A.*2d at 1227 (holding that trial courts are free to deduct hours from those requested in fee petition when plaintiff provides insufficient detail). The application also should set forth, among other things, whether the litigation involved great risk or raised novel issues. *See id.* at 337, 661 *A.*2d at 1227; *RPC* 1.5(a). The court should be able to determine in most cases the lodestar and any entitlement to an enhancement based on the supporting and opposing papers and argument of counsel.

The approach we outline here mirrors the one taken in the federal system. The federal courts are given ample discretion to resolve attorney-fee applications and are allowed to establish special procedures by local rule to avoid the need for "extensive evidentiary hearings." *Fed.R.Civ.P.* 54(d)(2)(D). The federal district courts are free to decide fee applications relying solely on affidavits and are required to conduct an evidentiary hearing only when necessary to render a fair decision. *See, e.g., Blum, supra,* 829 *F.*2d at 377 (observing that evidentiary hearing "must be held only where the court cannot fairly decide disputed questions of fact without it"); *see also Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.,* 675 *F.*2d 1319, 1330 (D.C.Cir.1982) (indicating that when trial court determines that it has adequate basis to make determination it has discretion to forego hearing); *cf. Love v. Deal,* 5 *F.*3d 1406, 1409 (11th Cir.1993) (concluding that trial court abused discretion in denying evidentiary hearing on attorneys'

fees when there was "dispute of material fact that [could not] be resolved from the record"). A district court is not required to hold an evidentiary hearing when a defendant makes conclusory statements questioning the reasonableness of a fee application; facts must be asserted to raise a dispute about a fee claim that only a hearing can resolve. *Blum v. Stenson,* 465 *U.S.* 886, 892 n. 5, 104 *S.Ct.* 1541, 1545 n.5, 79 *L.Ed.*2d 891, 897–98 n.5 (1984).

█ We believe that the approach of the federal courts is sound. In this case, the trial court must determine whether the certifications of counsel concerning the reasonableness of the prevailing attorneys' fees raise a genuine factual dispute that can be resolved only by the taking of testimony. The prevailing attorney and the attorney challenging the fee application should keep in mind that a plenary hearing is not a substitute for the failure to file *detailed* certifications.[12] Sufficient information should be contained in the certifications to permit the court to resolve the issues without a testimonial hearing. A plenary hearing should be a last resort. On remand, the trial court will decide the fee issue in accordance with the standards discussed in this opinion.

## V.

We hold that plaintiff's ascertainable loss in this consumer fraud action is the Ireloom carpet's replacement value. We also hold that plaintiff is entitled to the rebuttable presumption that the regular price advertised on the sales tag is the replacement value of the carpet. We remand to the Appellate Division the remaining evidential issues concerning proof of replacement value that were raised, but not addressed in its opinion. After the Appellate Division rules, this matter will be remanded to the trial court for a

---

[12] In his certification, defendants' attorney did not assist the court by making pejorative attacks on his adversary—such as by claiming that plaintiff made "outrageous demands" and "churned the file unnecessarily"—and by failing to counter with facts rather than rhetoric the detailed time records submitted by plaintiff's counsel.

trial on damages and a determination of reasonable attorneys' fees consistent with this opinion.

Chief Justice PORITZ and Justices LaVECCHIA, ZAZZALI, WALLACE, and RIVERA–SOTO join in Justice ALBIN's opinion.

Justice LONG did not participate.

*For affirmance and remandment*—Chief Justice PORITZ and Justices LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—6.

*Opposed*—None.