**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3599-20

CROSS ROADS CONDOMINIUM
OWNERS ASSOCIATION, INC.,

    Plaintiff-Respondent,

v.

JEAN COSENTINO,

    Defendant-Appellant.

_____

        Submitted September 14, 2022 – Decided September 28, 2022

        Before Judges Accurso and Firko.

        On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. DC-000088-21.

        Antonio J. Toto, attorney for appellant.

        McGovern Legal Services, LLC, attorneys for respondent (Heather M. McLean, on the brief).

PER CURIAM

Defendant Jean Cosentino appeals the July 6, 2021 order awarding plaintiff Cross Roads Condominium Owners Association, Inc.[1] judgment in the amount of $14,318.23[2] plus costs. The judgment was comprised of $13,447.73[3] in counsel fees, and the balance represented unpaid condominium fees and assessments—$870.50. Defendant argues that the court erred when it determined the amount of counsel fees awarded. For the reasons that follow, we affirm the $870.50 judgment amount but reverse and remand the award of counsel fees for reconsideration by the trial court.

I.

We derive the following facts from the record. Plaintiff is a residential condominium association responsible for the management of the common

---

[1] We use "plaintiff" and "Association" interchangeably in our opinion.

[2] In the court's oral decision, the judgment awarded to plaintiff is $14,318.23 plus costs. This amount includes an award to plaintiff for condominium fees, assessments, and counsel fees. However, the order of disposition entered on July 6, 2021, indicates judgment in favor of plaintiff is $14,318.25 plus costs. For purposes of this opinion, we are utilizing the amount set forth in the oral opinion. See Taylor v. Int'l Maytex Tank Terminal Corp., 355 N.J. Super. 482, 498 (App. Div. 2002) (noting "[w]here there is a conflict between a judge's written or oral opinion and a subsequent written order, the former controls").

[3] The first reference to counsel fees in the court's decision is $13,447.73. A later reference is to $13,447. For purposes of this opinion, we are utilizing the $13,447.73 figure.

A-3599-20

elements of a condominium complex in Bridgewater. Defendant purchased a residential unit at the complex in 2008 and resides there. The master deed contains bylaws stating unit owners are "personally obligated to pay" for their proportionate share of the administrative costs and common expenses required to operate the condominium association and cannot waive payment of maintenance fees. Plaintiff's Board of Trustees (Board) assesses the common expenses annually, but the maintenance fee is payable monthly.

The bylaws authorize the Board to

> establish special assessments, penalties and fines if required, because of budget deficits, extraordinary occurrences, violations of rules and regulations, or losses[,] and for other good cause. Such special assessments, fines, and penalties shall be deemed to be increases in the annual assessment and shall be assessed and collected in the same manner as the annual assessments.

Furthermore, the bylaws grant the Board the ability to charge late fees resulting from untimely payments for monthly maintenance fees and special assessments and entitles plaintiff to reasonable attorney's fees for collection of delinquent payments.

The bylaws define the term "common elements" to include but not be limited to "exterior surfaces, roofs, gutters and leaders, and all other items and areas which are not part of the individual units." The common elements are also

3

described in the bylaws as "[a]ll streets, curbs, sidewalks, parking areas[,] [l]awn areas, shrubbery, utility lines, water courses, drainage ways and facilities."

In addition, the bylaws state "[a]ny domestic cats kept by any resident shall be kept entirely within the confines of the unit occupied by the resident, and, under no circumstances, shall be allowed to roam at large."  Plaintiff first sent defendant a notice of violation on October 18, 2019, for "[m]ultiple cats roaming around the front of the unit and the common elements at all times."  The notice provided a fine of $25 per cat would be posted to defendant's account if she did not comply within ten days of her receiving the notice.

On October 18, 2019, defendant was served with a second notice of violation for the "[i]llegal modification of identifying door numbers and installation of [a] white picket fence on the common elements," contrary to the bylaws.  The pertinent section states:

> No owner, and no other person, shall make any changes in the common elements or limited common elements without the consent of the [Board] in writing (prior to the making of the change). . . .  Further, no owner and no other person, shall in any way alter the exterior appearance of any common element or limited common element, (and not by way of limitation) no one shall paint or restore the painting of, or alter the painting of, any exterior wall, railing, or other surface visible from the exterior of a unit without the prior consent in writing of the [Board].

4

The notice required defendant to correct the violations within ten days or a $50 fine would be posted to her account. On November 14, 2019, defendant received a third notice of violation for the "[i]llegal modification of identifying door numbers." Plaintiff warned defendant a $50 fine would be posted to her account if the issue was not rectified within three days of her receiving the notice.

On February 6, 2020, plaintiff assessed defendant a $100 violation fee because her cats were found continuing to roam the common elements after October 18, 2019. Plaintiff also fined defendant $50 for failing to rectify the illicit modification of her door number. Defendant did remove the white picket fence as requested.

In addition, plaintiff sent violation letters to defendant on July 26, 2019, and June 3, 2020, pertaining to the unauthorized planting of milkweed in common areas. The bylaws state "no owner, and no other person, shall plant any new plantings in any common areas, or limited common area, nor shall [they] alter any existing plantings in any common area or limited common area without the prior consent in writing of the Board." On May 24, 1999, the Board adopted a resolution addressing "plantings on any common or limited common areas."

A-3599-20

Under the resolution, flowers were to be planted only in containers placed on wooden decks or concrete patios, and any damage to the patios or decks from the containers would be repaired by plaintiff at the unit owner's expense. And, any new planting that was not filed with the original site plan or the May 18, 1998 landscape enhancement program had to be removed and discarded.

Plaintiff's July 26, 2019 letter informed defendant that if the milkweed was not removed within ten days, plaintiff would remove them at defendant's expense and post a violation fee to her account. The June 3, 2020 letter similarly requested defendant to remove the unauthorized plantings but stated a $100 fine was being charged regardless "[b]ecause this violation remain[ed] beyond the correction deadline in the first notice." After defendant failed to remove the milkweed, plaintiff's attorney sent her a letter on July 14, 2020, informing her they would be removed by plaintiff's landscaper if she did not do so by July 25, 2020. Defendant again failed to comply, and plaintiff hired a landscaper to remove the milkweed on August 28, 2020, at a cost of $87. On September 1, 2020, plaintiff's attorney notified defendant via letter that the milkweed was removed, and she was responsible for the cost.

Each notice of violation letter sent to defendant contained an Alternative Dispute Resolution (ADR) clause. Defendant was given the opportunity to

6

dispute the pending fines by making a written request within ten days of receipt of the letters for ADR but never did so.

In 2020, the Board issued a special assessment of $500 to all unit owners payable in five $100 installments between July 25 and November 25, 2020. The Board sent a coupon book to all unit owners, including defendant, on May 20, 2020, without explaining what the special assessment was for. However, on June 5, 2020, the Board sent a letter to unit owners apologizing for sending the coupon book and detailed the reason for the special assessment, how it could be paid, and when it was due. The letter also indicated that "the payment was to be made to a different account than the normal maintenance fees" and "could be paid electronically."

Defendant explained she did not pay the special assessment because she did not have a coupon book and did not know where to send the payments. However, defendant admitted she learned about the special assessment through a conversation with "Ed"[4] in late June of 2020. Defendant acknowledged her untimely maintenance fee payments, the milkweed, and door number fines.

---

[4] The record indicates "Ed" is Ed Lafean, the manager of Corner Property Management.

A-3599-20

On January 13, 2021, plaintiff filed a complaint in the Special Civil Part seeking $3,055.40 due on defendant's account as of January 5, 2021.[5] Plaintiff attached an itemized statement of defendant's outstanding account setting forth: (a) maintenance fees of $3,250; (b) late fees of $75; (3) fines of $200; (4) special assessments of $500; (5) administrative fees of $195.50; and (6) accrued attorney's fees of $1,659.90; minus (7) credits of $2,825. Plaintiff also requested any additional amounts not paid when due, for any and all attorney's fees and costs that may accrue, and any further common expenses.

Following a period of discovery and two unsuccessful settlement conferences, the matter proceeded to a bench trial. Defendant was represented by a Legal Services lawyer. Prior to trial, plaintiff informed defendant that it was withdrawing its request for late fees. On May 17, 2021, the court considered the testimony of the property manager, the Board president, and defendant. Plaintiff's proofs included its ledger of defendant's account and invoices for legal services incurred in litigating the matter, which had risen from $1,659.90 to $11,314.73. After the parties rested, plaintiff's counsel sought leave and was granted permission to submit a certification of additional attorney's fees for

---

[5] Plaintiff filed the complaint "c/o" Corner Property Management. This is not germane to our decision.

services and costs incurred following trial through May 25, 2021. The revised amount sought by plaintiff was $14,418.23, which included another $2,133 in counsel fees incurred post-trial.

In a comprehensive July 6, 2021 oral opinion, the court partially granted plaintiff's requests. The court itemized the $14,418.23 amount sought by plaintiff and found: "This amount consists of monthly maintenance fees of $75, special assessment for 2020 of $500, fines of [$200], administrative charge[s] of $195.50, and attorney's fees of $13,447.73." Based upon the evidence, the court found defendant responsible for the outstanding maintenance fee of $75; the $50 fine for her cats; the $50 door number violation; and the $100 fine for planting the milkweed.

However, the court reduced plaintiff's demand for administrative charges to $8.50 for a postal receipt charge; awarded $87 for the landscaper; and held defendant responsible for $95.50. The court found the remaining $100 charge sought by plaintiff, "for the manager to be present while the landscaper removed the plants[,]" unnecessary and unsupported by the bylaws and disallowed it. In addition the court determined defendant was responsible for the $500 special assessment.

9

The court reviewed the legal invoices and plaintiff's counsel's certification and highlighted that counsel addressed the reasonableness factors enumerated in RPC 1.5. After discussing the factors, the court emphasized "[i]f defendant is not responsible for these attorney's fees, then the rest of the homeowners would have to be responsible for the fees." The court stated further, "[o]ther than this amount, the fee overall is high at $13,447.73 [but] I do not find it is unconscionable. It was defendant's own actions that provoked this high level of fees." As a result, the court entered judgment for plaintiff in the amount of $14,318.23 plus costs. A memorializing order was entered. This appeal followed.[6]

## II.

Defendant does not appeal the underlying determination relative to maintenance fees, the special assessment, or administrative charges. The sole argument presented on appeal by defendant is the "unreasonable legal fees" awarded—$13,447.73 to collect the "paltry" sum of $870.50.

"Although New Jersey generally disfavors the shifting of attorney[']s[] fees," a prevailing party may recover attorney's fees if expressly provided by

___

[6] On September 13, 2021, the trial court entered an order granting defendant's motion to stay enforcement of the judgment pending our decision and denied plaintiff's motion to enforce litigant's rights.

statute, court rule, or contract. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 440 (2001) (citing N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569 (1999) and Dep't of Env't Prot. v. Ventron Corp., 94 N.J. 473, 504 (1983)). Rule 4:42-9(a)(8) permits the award of attorney's fees "[i]n all cases where attorney's fees are permitted by statute."

The Condominium Act authorizes the award of attorney's fees as follows:

> The [A]ssociation shall have a lien on each unit for any unpaid assessment duly made by the [A]ssociation for a share of common expenses . . . together with interest thereon and, if authorized by the master deed or bylaws, late fees, fines and reasonable attorney's fees.
>
> [N.J.S.A. 46:8B-21(a) (amended 2019).]

Defendant does not dispute that plaintiff, having prevailed in its action with respect to delinquent common expense assessments on her unit and bylaw violations, is entitled by statute and the governing documents of the Association to reasonable attorney's fees. The only issue before us is the quantum of the attorney's fees awarded.

In calculating the amount of reasonable attorney's fees, "an affidavit of services addressing the factors enumerated by RPC 1.5(a)" is required. R. 4:42-9(b); Twp. of W. Orange v. 769 Assocs., LLC, 198 N.J. 529, 542 (2009). RPC

1.5 sets forth the factors to be considered when determining an attorney's fee award. The Rule provides:

> (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8) whether the fee is fixed or contingent.
>
> [RPC 1.5.]

Courts determine the "lodestar," defined as the "number of hours reasonably expended" by the attorney, "multiplied by a reasonable hourly rate."

A-3599-20

Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (citing Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21 (2004)). "The court must not include excessive and unnecessary hours spent on the case in calculating the lodestar." Furst, 182 N.J. at 22 (citing Rendine v. Pantzer, 141 N.J. 292, 335-36 (1995)). We afford trial courts "considerable latitude in resolving fee applications." Grow Co. v. Chokshi, 424 N.J. Super. 357, 367 (App. Div. 2012).

Moreover, trial courts must determine whether the time spent "in pursuit of the 'interests to be vindicated,' the 'underlying statutory objectives,' and recoverable damages is equivalent to the time 'competent counsel reasonably would have expended to achieve a comparable result.'" Furst, 182 N.J. at 22 (alteration in original) (quoting Rendine, 141 N.J. at 336). Further, when "the fee requested far exceeds the damages recovered, 'the trial court should consider the damages sought and the damages actually recovered,'" Litton, 200 N.J. at 387 (quoting Packard-Bamberger, 167 N.J. at 446), although "proportionality between the damages recovered and the attorney-fee award itself" is not required. Furst, 182 N.J. at 23.

Here, plaintiff's bylaws state:

> The Board . . . may enforce the collection of any assessment against any owner and/or unit by any lawful means including, but not limited to, the following:

. . . .

(b) Filing suit against the individual owners of said unit. . . . In any suit filed, the individual owners <u>shall</u> be liable to the Association for <u>reasonable counsel fees and costs</u> entailed in the prosecution of said suit.

[(emphasis added).]

Pursuant to the bylaws and the Condominium Act mandate, plaintiff is entitled to reasonable attorney's fees and costs.

Here, the trial court reviewed each of the factors set forth in RPC 1.5. The court explained its rationale: "[T]he requirements to the various tasks appear to be within a reasonable period of time" as indicated on the list of fees provided, "[t]he amounts charged by the senior and junior attorneys appear to be the usual line of customary charges on an hourly rate for [similar] services[,]" the acceptance by counsel precludes the firm from accepting other legal employment because it does not represent developers or unit owners, counsel "cooperate[d] with the [A]ssociation to provide the best services at the lowest possible charges[,]" and the fees were "fixed and not contingent." The court also noted "paraprofessionals provid[ed] a portion of the services in this matter at a lower rate than attorney's fees."

The court also highlighted defendant's conduct and its implications. "Defendant's actions evoked the responses from the [A]ssociation" because

14

"[s]he engaged in activities that violated the rules[,] which necessitated legal actions." Rather than pay the amounts due and avoid violating the rules, defendant's defiance led to the lawsuit.

Plaintiff's counsel detailed the services performed in the certification were for

> collection efforts, such as preparation of a collection letter, preparation and recording of the lien, preparation and filing of the instant [c]omplaint, receipt of [d]efendant's [a]nswer, title search, postage expenses, filing fees, recording fees, conducting discovery, attending two [settlement] conferences, preparation of witnesses and materials for trial, attendance for a full trial day, and preparation and debriefing of clients, preparing the memorandum of law, legal research, reviewing [d]efendant's two memorandums of law, and preparation of the instant [a]ffidavit.

We agree with the court's conclusion that defendant is responsible for a portion of plaintiff's counsel fees pursuant to the governing documents and the Condominium Act. N.J.S.A. 46:8B-21. Nonetheless, we are not convinced the court properly considered all of the Rule 4:42-9(b) factors or the reasoning in Rendine, 141 N.J. at 334-38.

Plaintiff's complaint sought $3,055.40 for unpaid condominium related fees and fines and legal fees of only $1,659.90. Following a few hour bench trial, the court awarded fees approaching ten times that sum. Moreover, plaintiff

15

withdrew its claim for late fees and was not successful in obtaining "administrative fees," which are not authorized in the governing documents and were disallowed by the court. In addition, some of the fees awarded by the court were de minimis fines, such as for modification of the door sign, the two cats roaming the premises, and defendant not having identifying door numbers on her unit. Clearly, plaintiff did not prevail on every issue pled. We conclude the court misapplied its discretion in not giving proper weight to these compelling facts.

We recognize the court expressly considered that the fee award was greater than the damages, as required by Packard-Bamberger, 167 N.J. at 446, and, nonetheless, determined the fee was "high" but not "unconscionable." But unconscionability is no the standard, reasonableness is. See RPC 1.5(a). Although we only rarely reverse a fee award, Rendine, 141 N.J. at 317, the court's failure to consider "the amount involved and the result obtained," RPC 1.5(a)(4), compels our intervention here.

In sum, we affirm the trial court's July 6, 2021 order insofar as it relates to the judgment of $870.50 for unpaid condominium fees and assessments. We reverse and remand the amount of counsel fees awarded for reconsideration by the trial court. The September 13, 2021 order staying enforcement of the

16

judgment remains in full force and effect until further order of the trial court. To the extent we have not addressed any of defendant's other arguments, it is because we find them without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed in part, reversed and remanded in part for further proceedings consistent with our opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3599-20