NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3801-18T2

NINA SEIGELSTEIN,
on behalf of herself and
all others similarly situated,

      Plaintiff-Appellant,

v.

SHREWSBURY MOTORS,
INC., d/b/a SHREWSBURY
VOLKSWAGEN and JEFF
ANDERSON,

      Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **July 29, 2020**
>
> **APPELLATE DIVISION**

Argued February 5, 2020 – Decided July 29, 2020

Before Judges Koblitz, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey,
Law Division, Monmouth County, Docket No. L-
4072-15.

Andrew R. Wolf argued the cause for appellant (The
Wolf Law Firm LLC, and Christopher Joseph Mc
Ginn, attorneys; Andrew R. Wolf and Christopher
Joseph Mc Ginn, on the briefs).

Steven M. Richman argued the cause for respondents
(Clark Hill PLC, attorneys; Steven M. Richman and
Boris Brownstein, of counsel and on the brief).

The opinion of the court was delivered by

GOODEN BROWN, J.A.D.

Plaintiff Nina Seigelstein appeals from a March 27, 2019 Law Division order, "grant[ing] in part and den[ying] in part," her attorneys' application for fees in connection with a class action lawsuit against a car dealership, Shrewsbury Motors, Inc. d/b/a Shrewsbury Volkswagen, and its principal, Jeff Anderson, collectively defendants. The judge reduced the billable hours as well as the requested hourly rates and applied a lower contingency fee enhancement percentage than requested by plaintiff's attorneys (Class Counsel). On appeal, plaintiff only challenges the hourly rate reduction. Because we agree that the judge mistakenly exercised her discretion, we reverse.

On October 30, 2015, plaintiff filed a class action complaint alleging defendants violated the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, and the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act (TCCWNA), N.J.S.A. 56:12-14 to -18, in the sale and leasing of motor vehicles "by charging unlawful fees and failing to itemize the documentary fees charged to [p]laintiff and all those similarly situated." See R. 4:32-1; R. 4:32-2. Among other things, the complaint sought "reasonable

attorney's fees and costs pursuant to the CFA at [N.J.S.A.] 56:8-19 and/or TCCWNA at [N.J.S.A.] 56:12-17."

After defendants filed a notice of appeal as of right from the March 16, 2016 order denying arbitration, see R. 2:2-3, the parties engaged in extensive settlement negotiations, including participation in the Appellate Division's Civil Appeals Settlement Program (CASP). Negotiations ultimately resulted in the execution of a comprehensive class action settlement agreement on August 30, 2017, and, following confirmatory discovery, an amended final class action settlement agreement on November 30, 2017.

In pertinent part, the final agreement addressed Class Counsel's "entitlement" to reasonable attorneys' fees and costs as follows:

> Subject to the [c]ourt's [f]inal [a]pproval of this [f]inal [s]ettlement [a]greement, Shrewsbury Motors, Inc. shall pay the reasonable attorneys' fees and costs of Class Counsel to be determined by settlement or fee petition. . . . [T]he [p]arties will attempt to reach an agreement on the amount of attorneys' fees and costs. If such an agreement is reached, then, subject to [c]ourt approval within ten . . . days of the [e]ffective [d]ate, Shrewsbury Motors, Inc. shall pay the amount awarded, pursuant to [c]ourt approval. If such an agreement is not reached, Shrewsbury Motors, Inc. agrees to pay the amount of attorneys' fees and costs awarded by the trial court on any fee petition within ten . . . days of the [c]ourt's determination of same. Defendants shall be given proper notice of such fee applications and afforded the opportunity to file objections to the amount of the reasonable attorneys' fees and costs sought by Class Counsel. While

[d]efendants may file objections to the amount of reasonable attorneys' fees and costs sought by [C]lass [C]ounsel if an agreement on an amount of attorneys' fees and costs is not reached, [d]efendants agree and shall not object to Class Counsels' entitlement to their reasonable attorneys' fees and costs.

After the parties failed to reach an agreement on the amount of attorneys' fees, on June 4, 2018, plaintiff moved for final approval of the class action settlement,[1] which included a request for approval of attorney's fees and costs in the amount of $161,634.50 and $774.25, respectively, through June 1, 2018.[2] In detailed supporting certifications submitted by the lead attorneys, Andrew R. Wolf and Christopher J. McGinn, Class Counsel asserted they had expended a combined total of 273.7 hours on the litigation at their respective law firms. For the Wolf Law Firm LLC, hourly rates were listed as follows:

---

[1] Previously, on March 9, 2018, the judge had preliminarily approved the proposed class action settlement, certified the class for purposes of settlement, see R. 4:32-2(a) and (e), appointed plaintiff as Class Representative and her attorneys as Class Counsel, see R. 4:32-2(g), directed that notices be mailed to the settlement class members, see R. 4:32-2(b)(2), and scheduled a fairness hearing to consider any objections or exclusions and determine whether to "grant final approval to the settlement as fair, reasonable, and adequate." See R. 4:32-2(e)(1)(C); Chattin v. Cape May Greene, 216 N.J. Super. 618, 627 (App. Div. 1987) ("The basic test for court approval of a settlement of a class action is whether it is fair and reasonable to the members of the class."). Of the 2883 class members notified, no objections or requests for exclusion were received.

[2] Plaintiff sought leave to file a supplemental fee application for Class Counsel's time expended after June 1, 2018, including replying to any opposition to the fee application, attending the fairness hearing, and overseeing the implementation of the settlement.

Andrew R. Wolf at $765; Henry P. Wolfe at $625; Bharati S. Patel at $550; Andrew W. Li at $525; Kelly Samuels Thomas at $365; Matthew S. Oorbeek at $360; Mariel Mercado at $250; and a paralegal at $165. For the Law Office of Christopher J. McGinn, Christopher J. McGinn's hourly rate was listed as $500.

Wolf's and McGinn's certifications identified several New Jersey state and federal cases where the court had approved their current and comparable prior hourly rates. Additionally, Wolf, who was admitted to the New Jersey bar in 1995, averred that to date, he had "been certified as [C]lass [C]ounsel in 121 cases, many of which have involved claims brought under the [CFA] and the [TCCWNA]." McGinn, who was admitted to the New Jersey bar in 2002, certified that he "concentrate[d his] practice in the area of consumer protection law," and had "been appointed as [C]lass [C]ounsel in forty-eight class actions."

Further, Wolf submitted the biographies of the other attorneys in his firm who worked on the case, as well as a 2018 certification from Lawrence H. Shapiro, a 2015 certification from John E. Keefe, Jr., and a 2009 certification from Allyn Z. Lite. Shapiro, a partner in Ansell Grimm & Aaron, PC with a practice devoted predominantly to "commercial litigation," confirmed that Class Counsel's hourly rates in this case were "consistent with the rates

5

charged by other [law] firms throughout New Jersey and in Monmouth County by attorneys with similar experience, skill and reputation in handling such matters." Keefe, "a co-managing member of . . . Keefe Bartels[, LLC]" with "extensive experience . . . handling complex litigation, including consumer and other class action cases," certified in an unrelated contested fee application that Class Counsel's rates were "consistent with the rates charged . . . throughout New Jersey for attorneys with similar experience, skill and reputation," and "were recently approved for [his] firm" in several cases. Finally, Lite, then a "senior member of . . . Lite DePalma Greenberg & Rivas, LLC" specializing "in complex plaintiffs-oriented litigation," opined as Wolf's "expert . . . to assist the [c]ourt" in an unrelated fee application that "Class Counsel has long and deep experience in the class action arena" and, "[g]iven that experience and credentials of those lawyers, their rates [were] reasonable" and "comparable to . . . others who prosecute [and defend] class actions in the state and federal courts in New Jersey."

Additionally, Wolf submitted a September 26, 2014 oral decision rendered by Judge James Hely awarding attorneys' fees and costs to his firm in a contested fee application in an unrelated individual consumer fraud case, pointing out that Judge Hely specifically found that Class Counsel were "in a field which requires very, very specific knowledge" and "[v]ery few attorneys

would be able to take a case like this . . . and know what to do with it." Without leave of court, plaintiff later submitted supplemental support for Class Counsel's fee application consisting of a transcript of a July 27, 2018 unopposed award of counsel fees to the Wolf firm by Judge Ana C. Viscomi in a class action settlement captioned "Harris v. General Motors Financial Co., Inc., MID-L-3170-15." In accepting the hourly rate, Judge Viscomi "reviewed the [dated] submissions of other practitioners that [spoke] to the hourly rates," and noted that "the hourly rates [were] approved most recently in both Federal District Courts for the District of New Jersey as well as other Superior Courts."

Defendants opposed the counsel fee application, noting "[t]he fee amount represent[ed] approximately [forty-five percent] of the total monetary recovery for the settlement class." Among other things, defendants objected to Class Counsel's hourly rates. Defense counsel certified that the hourly rates of Class Counsel's lead attorneys were "unreasonably high, and somewhat misleading" because "th[e] case involved claims against a single automobile dealership, . . . focusing on the finite issue of whether or not a documentary fee was properly categorized." Defense counsel asserted that "[the] case was not actively litigated beyond the [c]ourt's denial of [d]efendants' [m]otion to [c]ompel [a]bitration," and "[t]here was no written discovery exchanged" other

7

than the brief confirmatory discovery conducted "pursuant to the . . . settlement agreement." Thus, according to defense counsel, "given the facts and circumstances of the . . . case," Class Counsel's lead attorneys "were both redundantly involved in much of the same work," resulting in an excessive "combined effective rate" of $1265 per hour. By comparison, defense counsel pointed out that "Steven Richman, a New Jersey-based attorney representing [d]efendants . . . with [thirty-eight] years of experience in commercial litigation, including class actions, provided services in this matter at an hourly rate of $450/hour." Defense counsel also objected to the supplemental submission, characterizing Judge Viscomi's decision as "irrelevant," and citing Shelton v. Restaurant.com, Inc., No. 10-824, 2016 U.S. Dist. LEXIS 176785, at *12-18 (D.N.J. Dec. 21, 2016), "in which the Wolf[] firm's fees were significantly reduced" by a federal district court judge.

On September 14, 2018, following oral argument, the judge entered an order granting final approval of the settlement, and reserved judgment on Class Counsel's fee application. Thereafter, on March 27, 2019, the judge entered an order awarding plaintiff $120,772.98 in attorneys' fees and costs, by reducing the requested hourly rates of all the attorneys and the paralegal, reducing the requested hours by 46.1 hours, and awarding a contingency fee enhancement of five percent, instead of the twenty-five percent sought by plaintiff. See

Rendine v. Pantzer, 141 N.J. 292, 335-37, 343 (1995) (holding that after establishing the lodestar, calculated by "the number of hours reasonably expended [on the litigation] multiplied by a reasonable hourly rate," the trial court should consider whether to increase that fee by awarding a contingency fee enhancement "in typical contingency cases ranging between twenty and thirty-five percent of the lodestar" in order "to reflect the risk of nonpayment in all cases in which the attorney's compensation entirely or substantially is contingent on a successful outcome.").

In an accompanying forty-eight-page statement of reasons,[3] the judge applied the governing principles and determined that in accordance with Rendine, 141 N.J. at 337, "the lodestar method," was "the proper way to determine attorneys' fees," as opposed to "the percentage recovery method," urged by defendants. Regarding the hourly rate, the judge stated she could not "deny that the attorneys are experienced, and that they received a positive result." However, the judge stressed that there was nothing particularly "novel or complex" about the case, and expressed concerns about "the number of attorneys and firms" working on the case and "the amount of time . . . Wolf and McGinn spent reviewing and editing documents which other attorneys also

---

[3] We note the length of the judge's written decision to point out that the judge clearly gave careful thought to her decision, and we intend no criticism of her painstaking and conscientious efforts.

reviewed and edited," noting that the "constant oversight and review of another senior attorney's work" was an "inefficient and unreasonable [practice]."

Turning to the supporting certifications submitted by Class Counsel, the judge pointed out that although Wolf "provide[d] biographies" for the other attorneys in his firm, "for the most part," his certification "provide[d] no meaningful information" regarding whether the other attorneys' rates were approved "in each of th[e] cases" in which Wolf had "received the requested fees." The judge also noted that while "Shapiro attest[ed] to the 'consistency' of hourly rates of the Wolf firm to his firm," his certification contained "absolutely no analysis but rather[] only conclusory assertions" and "appear[ed] to be a form certification that could be quickly issued in any case for any counsel." Further, according to the judge, the Keefe certification "found that the Wolf Firm rates . . . for partners and . . . associates" were "reasonable" in "a completely unrelated 2015 case" that was "venued in Middlesex County," not Monmouth County like this case. Likewise, the Lite certification "concluded that the 2009-blended Wolf Firm rate . . . was reasonable in a case venued in Middlesex County." In sum, the judge found it particularly relevant that "not one of the [three] certifications provide[d] a modicum of detail regarding this particular case," or "opine[d] on the reasonableness of [McGinn's] rates."

10

Further, the judge distinguished the two judicial opinions submitted by Class Counsel, finding that "Judges Hely and [Viscomi's] decisions were not instructive in determining the reasonableness of the fees requested here." On the other hand, the judge cited four unpublished cases, including the case cited by defendants, and indicated that she was "[r]elying on the . . . case[s]" in part to adjust Class Counsel's hourly rates. In that regard, the judge stated:

> Despite the lack of evidence to support their rates, the court has reviewed recent case law to determine some facts that other courts considered in an effort to set the appropriate fee where class counsel sought more than $500 an hour. See [In re Johnson & Johnson, 2013 U.S. Dist. LEXIS 180822, at *225-26 (D.N.J. June 13, 2013)] (setting $750 as a reasonable rate and ceiling for the lead attorney, who was from Carella Byrne, which is located in Roseland, New Jersey, had twenty-three years of complex federal and state litigation);[4] Educ[.] Station Day Care Ctr. [Inc. v. Yellow Book USA, Inc.], 2007 N.J. Super. Unpub. LEXIS 1607[,] at *20 [(App. Div. May 1, 2007)] (stating that [a] former Supreme Court Justice's rate of $550 per hour was "not disproportionate considering the vastness, preparedness and expertise necessary for this type of settlement"); Cohen v. Perelman, 2015 N.J. Super. Unpub. LEXIS 657[,] at *17 (Law Div. Mar. 16, 2015) (decreasing Greenbaum Rowe's named partner's contract billing rate of $725 down to $580, which represented an adjustment of approximately [twenty percent]); and Shelton[, 2016 U.S. Dist.

---

[4] The judge also pointed out that in Johnson, "the proponents of the fee award provided certifications but did not provide any analysis, which is precisely what occurred here. Consequently, the court declined to rely on those affidavits because the affidavits' references to other courts' approvals of the firms' hourly rates were lacking in details."

11

LEXIS 176785, at *12-18] (declining to award [the] same fees being sought in this case for many of the same attorneys and instead awarding a range of between $290 and $520, albeit based upon a different analysis).

In addition to considering the four unpublished cases, the judge "[relied] on . . . [her] fifteen years of private practice [experience]," and analyzed "the parties' submissions as well as other factors expressed in [RPC] 1.5(a)." Based on her detailed analysis, the judge concluded that "Class Counsel ha[d] not met their burden of demonstrating the customary rate for this type of work," and had "not even define[d] . . . the community at issue." Therefore, the judge reduced the attorneys' and the paralegal's hourly rates as follows: (1) Wolf's rate from $765 to $575; (2) Wolfe's rate from $625 to $500; (3) Patel's rate from $550 to $475; (4) Li's rate from $525 to $450; (5) Thomas's rate from $365 to $275; (6) Oorbeek's rate from $360 to $270; (7) Mercado's rate from $250 to $225; (8) the paralegal's rate from $165[5] to $125; and (9) McGinn's rate from $500 to $475.

This appeal followed, in which plaintiff argues that "[d]espite the paucity of evidence to contradict Class Counsel's submissions," the judge "set new lower rates for all attorneys and paralegals" contrary to "the evidence driven process required by Rendine." Additionally, according to plaintiff, by

---

[5] The judge's statement of reasons lists the paralegal's hourly rate at $160 whereas Class Counsel's billing records indicate a rate of $165.

"relying on facts gleaned from an unrepresentative sample of old, unpublished decisions" as well as "prior experience while in private practice," the judge abused her discretion.

"We invest our trial courts with wide latitude in resolving attorney-fee applications." Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 25 (2004). As a result, "fee determinations by trial courts will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion." Rendine, 141 N.J. at 317. "[A]buse of discretion is demonstrated if the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005) (citing Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Thus, we have stated that "[w]here the [trial] court's determination of fees was based on irrelevant or inappropriate factors, or amounts to a clear error in judgment," we "should intervene." Garmeaux v. DNV Concepts, Inc., 448 N.J. Super. 148, 155-56 (App. Div. 2016) (citing Masone, 382 N.J. Super. at 193). We have also stated that where "the methodology used by the judge is untethered to the standards adopted by our Supreme Court for determining an award of counsel fees," the "ultimate conclusions reached by the judge" are

13

"thus arbitrary" and reversible. Jacobs v. Mark Lindsay & Son Plumbing & Heating, Inc., 458 N.J. Super. 194, 210-11 (App. Div. 2019).

"The starting point in awarding attorneys' fees is the determination of the 'lodestar,' which equals the 'number of hours reasonably expended multiplied by a reasonable hourly rate.'" Furst, 182 N.J. at 21 (quoting Rendine, 141 N.J. at 335). While the trial court must consider the factors in RPC 1.5(a)[6] "[i]n determining the reasonableness of a fee," Stoney v. Maple Shade Twp., 426 N.J. Super. 297, 318 (App. Div. 2012) (citing Furst, 182 N.J. at 22),

> the trial court's determination of the lodestar amount is the most significant element in the award of a reasonable fee because that function requires the trial

---

[6] RPC 1.5(a) sets forth the following factors necessary to determine whether an attorney fee is reasonable:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

Rule 4:42-9(b) requires an attorney to submit an affidavit of services addressing the factors listed in RPC 1.5(a).

A-3801-18T2

court to evaluate carefully and critically the aggregate hours and specific hourly rates advanced by counsel for the prevailing party to support the fee application.

[Rendine, 141 N.J. at 335.]

See also Szczepanski v. Newcomb Med. Ctr., Inc., 141 N.J. 346, 366 (1995) ("[A] trial court should carefully and closely examine the lodestar-fee request to verify that the attorney's hours were reasonably expended.").

In that regard, trial courts "should not accept passively the submissions of counsel to support the lodestar amount." Rendine, 141 N.J. at 335. Instead, "the attorney's presentation of billable hours should be set forth in sufficient detail to permit the trial court to ascertain the manner in which the billable hours were divided among the various counsel" and the trial court must "determine whether the assigned hourly rates for the participating attorneys are reasonable." Id. at 337.

> Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community. Thus, the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.
>
> That determination need not be unnecessarily complex or protracted, but the trial court should satisfy itself that the assigned hourly rates are fair, realistic, and

accurate, or should make appropriate adjustments. To take into account delay in payment, the hourly rate at which compensation is to be awarded should be based on current rates rather than those in effect when the services were performed.

[Ibid. (quoting Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)).]

"The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable." Rode, 892 F.2d at 1183. "To meet its burden, the fee petitioner must 'submit evidence supporting the hours worked and rates claimed.'" Ibid. (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). "In a statutory fee case," such as this one, "the party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." Ibid.

In Rendine, the plaintiffs prevailed in an employment discrimination case tried to a jury, and on appeal. 141 N.J. at 298. Our Supreme Court granted the defendant's petition for certification challenging counsel fees, among other issues. Ibid. In setting forth the facts relevant to the trial court's award of counsel fees, the Court stated:

To support the reasonableness of their lodestar fee, plaintiffs' counsel submitted certifications by several lawyers in their own firm attesting that the hourly rates used to calculate the lodestar were consistent with the standard hourly rates for the

participating lawyers. In addition, plaintiffs' counsel submitted certifications from three experienced employment-law practitioners from other law firms who had provided estimates of the hours required to litigate a plaintiff's employment-discrimination case, and the estimates either exceeded or approximated the hours expended by plaintiffs' counsel. Those unaffiliated lawyers also certified that the hourly rates billed by the attorneys that had worked on the litigation appeared to be reasonable and consistent with rates charged by lawyers of comparable seniority and experience. Although defendant did not specifically challenge the reasonableness of the hourly rates used to calculate plaintiffs' counsel's lodestar fee, defendant contended that the hours expended, especially those devoted to pretrial discovery and preparation, were excessive and should be reduced significantly. The trial court concluded, however, that the total number of hours expended by plaintiffs' counsel was reasonable, as were the hourly rates, which resulted in the trial court's acceptance of the lodestar fee of $114,334.25.

[Id. at 318-19.]

Although the Court ultimately reduced the contingency fee enhancement applied to the lodestar by the trial court, the lodestar remained intact. Id. at 345.

In Walker v. Giuffre, the Court reaffirmed "the continuing validity of the Rendine approach," and held that "Rendine shall remain in full force and effect as the governing principles for attorneys' fee awards made pursuant to fee-shifting provisions in our state statutes and rules." 209 N.J. 124, 128-29 (2012). Although the Court reversed the Appellate Division's order vacating

and remanding the award of counsel fees to Walker's attorneys for reasons not germane to this appeal, the Court did not question the Appellate Division's complete rejection of the trial judge's reliance on "'personal opinion . . . predicated solely on [the judge's] own professional experiences'" to "'satisfy the analysis required . . . under Rendine to determine a reasonable hourly rate.'" Id. at 146 (quoting Walker v. Giuffre, 415 N.J. Super. 597, 607 (App. Div. 2010)).

Here, to support the fee application, Class Counsel submitted certifications by the lead attorneys, both highly experienced in class action consumer protection litigation, attesting that the hourly rates were consistent with their standard hourly rates and had been previously approved in several New Jersey state and federal cases. In addition, Class Counsel submitted certifications from three experienced unaffiliated practitioners who also certified that the hourly rates billed by the attorneys working on the litigation were reasonable and consistent with rates charged in the community by lawyers of comparable seniority and experience. In that regard, other than referring to the hourly rate of one of defendants' attorneys, defense counsel's certification did not dispute Class Counsel's submissions. Indeed, the judge even commented that "[d]efendants could have facilitated the analysis by providing certifications as to what the local or customary fee [was]."

Class Counsel's undisputed submissions mirrored the certifications deemed acceptable in <u>Rendine</u>. In rejecting Class Counsel's submissions and reducing the hourly rate for all the attorneys and the paralegal, the judge relied on her personal experience in private practice, a methodology rejected in <u>Walker</u>, 209 N.J. at 146, and considered four unpublished decisions. <u>See</u> <u>Brundage v. Estate of Carambio</u>, 195 N.J. 575, 592-93 (2008) (acknowledging that <u>Rule</u> 1:36-3 "provides that '[n]o unpublished opinion shall constitute precedent or be binding upon any court.'" (alteration in original) (quoting <u>R.</u> 1:36-3)). Under these circumstances, we are persuaded that the judge's reduction of the hourly rates was based upon consideration of inappropriate factors, and thus reflects a mistaken exercise of discretion. Accordingly, we are constrained to reverse and remand for reconsideration of the counsel fee award.[7]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] In remanding this matter, we make no finding or suggestion about what hourly rates ultimately should be deemed reasonable for this kind of case.