**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2126-19

JEFFREY CLIFFORD,
KIMBERLEE CLIFFORD,
and OWEN CLIFFORD,

      Plaintiffs-Respondents,

v.

CLIFTON COLFAX AUTO
MALL, LLC,
and MAHER KOUR,

      Defendants-Appellants

and

RLI INSURANCE COMPANY,

      Defendant.

_____

         Submitted January 19, 2020 – Decided  February 8, 2021

         Before Judges Sabatino and DeAlmeida.

         On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. DC-000348-19.

De Marco & De Marco, attorneys for appellants
Clifton Colfax Auto Mall, LLC and Maher Kour
(Michael P. De Marco, on the briefs).

Richard A. Vrhovc, attorney for respondents (Richard
A. Vrhovc, on the briefs).

PER CURIAM

After a three-day bench trial in the Special Civil Part, the trial judge found defendants had violated the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1 to -20, in connection with their sale of a used 2004 Mazda Miata to plaintiffs. The judge awarded treble damages to plaintiffs, plus counsel fees. Defendants now appeal. We affirm.

The proofs showed that defendants[1] Clifton Colfax Auto Mall, LLC and Maher Kour advertised the car on Craigslist, without initially revealing they operated a used car dealership. Plaintiffs Jeffrey Clifford, Kimberlee Clifford, and Owen Clifford are family members who live in Mechanicsburg, Pennsylvania. They responded to the posting and asked about the car. Because they had a bad experience in the past with a rusted vehicle, they specifically

---

[1] RLI Insurance Company, which was named as a co-defendant in the lawsuit because it had issued a bond relating to the transaction, ultimately was dismissed from the appeal.

A-2126-19

asked defendants if the car had rust, and defendant Kour responded by text message that the car had "no rust on it."

Encouraged by this, plaintiffs drove over three hours from central Pennsylvania to defendants' dealership in North Jersey and looked at the car. They did not see the undercarriage of the car because it was low to the ground and was not on a lift. They agreed to make the purchase on the spot.

Plaintiffs paid defendants $7,998 for the car and took it back home to Pennsylvania. When they got there, they noticed the tires were deflated, so they brought it to a Firestone repair shop. Once the car was put on a lift at Firestone, it was discovered to have massive rust underneath, making the car unsuitable to pass inspection. To mitigate their damages, plaintiffs sold the car to Owen Clifford's co-worker for $4,500, which was not documented but explained in Owen's testimony.

After considering written summations, the judge issued an opinion finding that defendants violated the CFA by making false representations that the car was rust-free. The judge awarded plaintiff net damages of $4,688.44, which, when trebled pursuant to N.J.S.A. 56:8-19 amounted to $14,065.32, plus attorneys' fees of $17,125.82.

3

On appeal, the defense argues the liability findings were against the weight of the evidence and that the trial court failed to provide adequate reasons for the damages award and the fee award. We disagree.

Our scope of review of the trial court's decision in this non-jury matter is limited. An appellate court shall "not disturb the factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Seidman v. Clifton Sav. Bank, 205 N.J. 150, 169 (2011) (quoting In re Trust Created by Agreement Dated December 20, 1961, 194 N.J. 276, 284 (2008)); see also Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985) (noting the trial court's "major role is the determination of fact"); Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974). We only review de novo the trial court's legal determinations. 30 River Court E. Urban Renewal Co. v. Capograsso, 383 N.J. Super. 470, 476 (App. Div. 2006) (citing Rova Farms, 65 N.J. at 483-84).

In conducting our review, we take particular note that the trial judge found the testimony of the three plaintiffs generally more credible and persuasive than that of defendant Kour. These first-hand credibility assessments deserve our deference. We bear this in mind as we turn to the legal issues.

4

The law under the CFA that applies to this car sale is well established. The CFA makes the following acts unlawful, in connection with the sale or advertisement of merchandise or real estate:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .
>
> [N.J.S.A. 56:8-2 (emphasis added).]

Unlike the elements of a common law fraud claim, the CFA does not require the plaintiff to have reasonably relied on the misrepresentation or that the defendant have knowledge or belief of the statement's falsity. Cf. Jewish Ctr. of Sussex Cnty. v. Whale, 86 N.J. 619, 624 (1981) (citations omitted) (outlining the five elements required to prevail on a common law fraud claim).

Violations of the CFA can arise under three different categories: (1) "[a]n affirmative misrepresentation, even if unaccompanied by knowledge of its falsity or an intention to deceive"; (2) "[a]n omission or failure to disclose a material fact, if accompanied by knowledge and intent"; and (3) "violations of

specific regulations promulgated under the [CFA]," which are reviewed under strict liability. Monogram Credit Card Bank of Ga. v. Tennesen, 390 N.J. Super. 123, 133 (App. Div. 2007) (third alteration in original) (emphasis added) (citations omitted). The first category applies here.

An affirmative misrepresentation in the context of the CFA is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." Gennari v. Weichert Co. Realtors, 288 N.J. Super. 504, 535 (App. Div. 1996) (emphasis added), aff'd, 148 N.J. 582 (1997). A showing of mere inducement is sufficient. Reasonable reliance by a plaintiff—although it appears palpable in this record—does not have to be demonstrated to prevail on a CFA claim.

Defendants contend their "no rust" representation to plaintiffs was not material to the sale of the Miata. The trial judge soundly rejected this contention.

A statement is material under New Jersey law if:

> (a) a reasonable person would attach importance to its existence in determining a choice of action . . . ; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.

A-2126-19

> [Ji v. Palmer, 333 N.J. Super. 451, 462 (App. Div. 2000) (quoting Restatement (Second) of Torts § 538(2) (1977)).]

The trial court judge correctly applied this concept of materiality in her written post-trial decision:

> This Court finds that Mr. Kour's statement in the text message "no rust" was a material misrepresentation of fact, relied upon by the [p]laintiffs, found to be false and was made to induce the buyer to come to New Jersey to make the purchase. Mr. Kour was the person who set up the advertisement, using his personal cell phone number and who either responded to the texts or directed his sons to respond at his direction. This Court believes that he was unaware that there was rust on the underside of the vehicle as this Court believes he never actually looked. Nevertheless, the Court can still find that he violated the CFA and does so.
>
> [(Emphasis added).]

The court's finding is well supported, and we affirm it.

The untrue representation was clearly intended to induce plaintiffs to go from Pennsylvania to Northern New Jersey to buy this car. Defendants are in the business of selling cars and sell between seventy-five and one hundred of them each year. They advertise their cars on Craigslist by putting Kour's personal cell phone number on the internet. Kour's contention that his response to Owen's inquiry about rust was not intended to encourage Owen's family to buy the car is untenable.

7

The "as is" provision in the sale contract did not waive these consumers' statutory rights under the CFA. Nor did it matter that plaintiffs allegedly declined a seller's warranty for $200.

Next, we are satisfied the court reasonably determined the amount of damages, as illuminated by the written Addendum the judge issued after her original decision on liability.

In order to have standing to sue under the CFA, a consumer must prove an "ascertainable loss of moneys or property." N.J.S.A. 56:8-19; see also Laufer v. U.S. Life Ins. Co., 385 N.J. Super. 172, 186 (App. Div. 2006). "The ascertainable loss requirement operates as an integral check upon the balance struck by the CFA between the consuming public and sellers of goods." Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 251 (2005).

The loss does not have to have been paid out of pocket by the consumer, although it must be "quantifiable or measurable." Ibid. "An 'estimate of damages, calculated within a reasonable degree of certainty,' will suffice . . . ." Id. at 249 (quoting Cox v. Sears Roebuck & Co., 138 N.J. 2, 22 (1994)). As the Court explained in Thiedemann, "either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle and will set the stage for establishing the measure of damages." Id. at 248 (emphasis added).

8

Although plaintiffs did not present expert testimony as to the fair market value of the Miata at the time of its resale, Owen testified that he conducted research as to the value of the vehicle before selling it to his co-worker. The sum of $4,500, more than half the sales price, appears to be a reasonable price for a rusted used car that apparently could not be registered to drive in Pennsylvania. Plaintiffs manifestly acted with due diligence in mitigating damages. See Premier XXI Claims Management v. Rigstad, 381 N.J. Super. 281, 284-86 (App. Div. 2005). The damages were rationally calculated.

Lastly, we adopt the trial court's award of reasonable counsel fees to plaintiffs pursuant to N.J.S.A. 56:8-19. Our scope of review of such counsel fee awards is deferential. See, e.g., Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (noting the deference owed on appeal in reviewing a trial court's fee awards); Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 444 (2001) (same). The amount of fees shifted need not be proportional to the amount of damages awarded. Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 23 (2004). We are satisfied the court's calculation of fees was not overly generous, and that the risks of litigation and the degree of success obtained were especially taken into account.

All other points raised on appeal lack sufficient merit to be worthy of discussion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2126-19