# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1102-18T1

IN THE MATTER OF B.M.,
An Incapacitated Person.

_____

Submitted December 5, 2019 – Decided May 6, 2020

Before Judges Nugent, Suter and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. F-5-9849.

Theodore P. Sliwinski, attorney for appellant E.M.

Porro Law Group, LLC, attorneys for respondent L.M. (Janet L. Porro, on the brief).

PER CURIAM

Defendant E.M.[1] appeals from the October 22, 2018 judgment of the Chancery Division finding he violated his fiduciary duties as guardian of his incapacitated sister, B.M., directing him to disgorge $121,000 he withdrew from

---

[1] The parties are identified by initials to protect the confidentiality of the court's guardianship records. R. 1:38-3(e).

B.M.'s accounts for his personal use, and awarding B.M. $52,438.68 in attorney's fees and costs. We affirm the October 22, 2018 judgment in all respects except the award of attorney's fees and costs, which we vacate. We remand for a new determination of B.M.'s application for attorney's fees and costs.

I.

The following facts are derived from the record. B.M. has been incapacitated since birth. E.M. and plaintiff L.M. are her siblings. B.M. has lived with L.M., who provides for all aspects of B.M.'s care, for approximately twenty-seven years.

After her mother's death, B.M. was declared mentally incompetent, and guardians were appointed for her person and property. At that time, guardianship accounts were established for B.M.'s benefit, including a checking account, a money market savings account, and a certificate of deposit. She also possessed a life insurance policy. B.M.'s income consists solely of payments from her father's pension and periodic social security disability benefits, all of which are deposited into her checking account. Also upon her mother's death, B.M. inherited a one-half interest in the home in which she resides with L.M.

A-1102-18T1

As of June 1, 2005, L.M. was the appointed guardian of B.M.'s person, and E.M. was the appointed guardian of B.M.'s property. The two guardians established a practice through which L.M. would pay for B.M.'s daily expenses and submit a monthly request to E.M. for reimbursement from B.M.'s accounts by check. E.M. also paid some of B.M.'s recurring bills directly from her accounts, including premiums on B.M.'s supplemental health insurance and a one-half contribution towards the local property taxes on her residence.

While L.M. acknowledges she was reimbursed by E.M. for all of the expenses she paid on behalf of B.M., a number of the reimbursement checks initially were rejected for insufficient funds. In addition, L.M. was notified that E.M. had not paid some of B.M.'s medical bills, including her health insurance premiums, which caused her coverage to lapse. E.M. also never filed an accounting during his guardianship.

As a result, L.M. filed a verified complaint and order to show cause in the Chancery Division seeking the removal of E.M. as guardian of B.M.'s property. After a plenary hearing, the court removed E.M. as the guardian of B.M.'s property because he: (1) failed to file guardianship accountings; (2) mishandled guardianship assets; and (3) was not a resident of New Jersey. On January 13,

2017, the court entered an order removing E.M. and appointing L.M. as guardian of B.M.'s property.

Having gained access to B.M.'s bank records, which had been withheld by E.M. during the first proceeding, L.M. came to believe E.M. misappropriated $99,815.47 from B.M.'s accounts during his guardianship. As a result, L.M. filed a second verified complaint and order to show cause in the Chancery Division alleging E.M.: (1) misappropriated B.M.'s funds; (2) allowed B.M.'s secondary health insurance to lapse for failure to pay premiums; and (3) cashed in B.M.'s life insurance policy for his personal use.

The court held a two-day proof hearing on the second verified complaint. Both L.M. and E.M. testified. L.M. presented as evidence summaries she created from the records of B.M.'s bank accounts for the period 2005 to 2017. In the summaries, she totaled checks E.M. wrote to himself and all cash withdrawals, which she attributed to E.M. because B.M. is unable to make cash withdrawals. To that figure, L.M. added bank fees assessed for insufficient funds and overdrafts caused by E.M. In addition, L.M. testified she reviewed records of deposits to B.M.'s checking account, and either could not determine the source of the deposits or found that they were, in effect, transfers from B.M.'s

4

other accounts. She concluded E.M. misappropriated $121,075.75 from B.M. and depleted her money market account and certificate of deposit.

E.M. admitted that beginning in 2007, he removed money from B.M.'s accounts for his personal use due to his addiction to opioids. He claimed, however, to have replaced all of the money he misappropriated from B.M.'s accounts through deposits from his own funds. E.M. admitted he cashed in B.M.'s life insurance policy, but testified he deposited the proceeds into her account. He claimed he ultimately overpaid B.M.'s accounts by approximately $36,000 because he felt it was his moral obligation to contribute to the cost of her care.

At the conclusion of the hearing, the trial court found L.M.'s testimony was "entirely credible[,]" given that she "meticulously detailed every deposit and withdrawal from the account" and "testified directly . . . without any hesitation . . . [and] was absolutely candid." On the other hand, the court found E.M. "took opportunities . . . to deflect from his own responsibility as much as he possibly could" and was "entirely incredible as . . . a result of his demeanor, [and] not just the fact that all the documentation disputes almost everything he testified to."

The court found that

[h]aving heard [L.M.'s] testimony and seeing the documents she submitted[,] it does clearly show that there were repeated withdrawals and checks written on the ward's account that went directly to [E.M.] Moreover, there were cash withdrawals with no indication whatsoever where they went. There are clear indications that there were constant and continuous overdrafts on the account and that the account went into negative territory, again, time after time after time, incurring additional fees.

In addition, the court noted that

the vast majority of the deposits [E.M.] made, and I'm not going to go . . . into each individual one. But the vast majority . . . there was either a contemporaneous withdrawal for the exact same amount of funds that he supposedly deposited or . . . he actually cashed the check. He would deposit the funds, write a check out from the same account, and then cash the check so it wasn't a deposit at all. At best[,] he was using the account for laundering the money. At worst, it is more likely, as [L.M.] indicates, that he was taking it from one of the ward's other accounts, depositing into her checking account and then withdrawing cash for himself or writing a check for himself and cashing it on the spot.

On October 22, 2018, the trial court entered a judgment finding E.M. "committed acts of malfeasance and misfeasance during the course of his [g]uardianship of the property of [B.M.]" and had caused a loss to B.M. of $121,000 through misappropriation of her funds for his personal use. The court ordered E.M. to repay that sum to B.M. through L.M.

6

After the proof hearing and prior to entry of judgment, L.M. submitted a request on behalf of B.M. for an award of $52,438.68 in attorney's fees and costs. The court granted the application in its entirety, as reflected in the October 22, 2018 judgment. The record contains no indication the court made findings of fact and conclusions of law with respect to the award of attorney's fees and costs.

This appeal followed. E.M. raises the following arguments for our consideration:

> POINT ONE
>
> THE TRIAL COURT FAILED TO GIVE THE DEFENDANT ADEQUATE CREDIT FOR ALL OF HIS FUNDS THAT HE DEPOSITED INTO THE GUARDIANSHIP ACCOUNT.
>
> POINT TWO
>
> THE TRIAL COURT COMMITTED SEVERAL ERRORS IN THEIR [SIC] FACT-FINDING DUTIES.
>
> POINT THREE
>
> THE TRIAL COURT COMMITTED A REVERSIBLE ERROR BY NOT GRANTING THE MOTION TO VACATE THE DEFAULT.
>
> POINT FOUR
>
> THE TRIAL COURT COMMITTED A REVERSIBLE ERROR BY GRANTING THE PLAINTIFF'S [SIC] COUNSEL FEES.

A-1102-18T1

## II.

Our scope of review of the judge's findings in this nonjury trial is limited. We must defer to the judge's factual determinations, so long as they are supported by substantial credible evidence in the record. Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 483-84 (1974). "Appellate review does not consist of weighing evidence anew and making independent factual findings; rather, [this court's] function is to determine whether there is adequate evidence to support the judgment rendered at trial." Cannuscio v. Claridge Hotel & Casino, 319 N.J. Super. 342, 347 (App. Div. 1999). "Deference to a trial court's fact-findings is especially appropriate when the evidence is largely testimonial and involves questions of credibility." In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997). Since the trial court "'hears the case, sees and observes the witnesses, [and] hears them testify,' it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (alteration in original) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

A-1102-18T1

After carefully reviewing E.M.'s arguments in light of the record and applicable legal principles, we conclude the record contains substantial, credible evidence supporting the trial court's findings of fact. L.M., who the trial court found to be credible, provided a detailed account of the withdrawals E.M. made from B.M.'s accounts, as well as the various bank fees incurred as a result of his mismanagement of those accounts. E.M. admitted he violated his fiduciary duties by repeatedly withdrawing B.M.'s funds to finance his addiction. Although E.M. testified that he reimbursed B.M.'s accounts for the full amount he withdrew, the trial court found his testimony, which was unsupported by bank records, to lack credibility. The trial court's finding that E.M. misappropriated $121,000 is well supported.

We also find no error in the trial court's conclusion E.M. violated his fiduciary duties to B.M. The role of a guardian of an incapacitated person's estate is largely statutory. In re Guardianship of A.D.L., 208 N.J. Super. 618, 623 (App. Div. 1986). A guardian is authorized to "expend or distribute so much or all of the income or principle of his ward for the support, maintenance, education, general use and benefit of the ward . . . ." N.J.S.A. 3B:12-43 (emphasis added). A guardian must exercise reasonable care, skill, and caution when handling the assets of his ward. In re Keri, 181 N.J. 50, 57 (2004).

A-1102-18T1

As the guardian of B.M.'s property, E.M. had a duty not to withdraw her funds for his own use. It is self-evident that E.M.'s repeated misappropriation of B.M.'s funds to support his addiction was a violation of his duty to protect his ward's finances and preserve the funds needed for her care and support.

In addition, E.M.'s argument the trial court erred by not vacating default entered against him is meritless. As the court noted after E.M. moved to vacate default, "[t]here really is not default. The fact of the matter is [E.M.] just did not comply with the court orders to provide the necessary discovery and the accounting." The court did not limit in a meaningful way E.M.'s ability to present evidence at the proof hearing. To the contrary, the court admitted a large number of documents offered as evidence by E.M., who was permitted to testify, cross-examine L.M., and offer a defense to her allegations.

Nor do we find the trial court erred when it denied E.M.'s request, made on the first day of the proof hearing, to adjourn the proceedings and extend discovery to permit him to retain an expert to create a forensic analysis of B.M.'s bank records. We review the trial court's decision with respect to an extension of discovery for an abuse of discretion. Huszar v. Greate Bay Hotel & Casino, Inc., 375 N.J. Super. 463, 471-72 (App. Div. 2005). The trial court acted well

within its discretion in denying E.M.'s request, given its lateness and his persistent failure to produce B.M.'s bank records during discovery.

Finally, the decision to award attorney's fees rests "within the sound discretion of the trial court." Maudsley v. State, 357 N.J. Super. 560, 590 (App. Div. 2003). "[F]ee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigration and Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Although New Jersey generally disfavors the shifting of attorney's fees, a prevailing party may recover attorney's fees if expressly provided by statute, court rule, or contract. Collier, 167 N.J. at 440 (citing North Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569 (1999) and Dep't of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 504 (1983)). Rule 4:42-9(a)(8) permits the award of attorney's fees "[i]n all cases where attorney's fees are permitted by statute."

11

In calculating the amount of reasonable attorney's fees, "an affidavit of services addressing the factors enumerated by RPC 1.5(a)" is required. R. 4:42-9(b); Twp. of W. Orange v. 769 Assocs., LLC, 198 N.J. 529, 542 (2009). RPC 1.5(a) sets forth the factors to be considered:

> (a)  A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1)  the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2)  the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3)  the fee customarily charged in the locality for similar legal services;
>
> (4)  the amount involved and the results obtained;
>
> (5)  the time limitations imposed by the client or by the circumstances;
>
> (6)  the nature and length of the professional relationship with the client;
>
> (7)  the experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8)  whether the fee is fixed or contingent.

Courts determine the "lodestar," defined as the "number of hours reasonably expended" by the attorney, "multiplied by a reasonable hourly rate." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (citing Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21 (2004)). "The court must not include excessive and unnecessary hours spent on the case in calculating the lodestar." Furst, 182 N.J. at 22 (citing Rendine, 141 N.J. at 335-36).

"The amount of attorney fees usually rests within the discretion of the trial judge, but the reasons for the exercising of that discretion should be clearly stated." Khoudary v. Salem Cty. Bd. of Soc. Servs., 281 N.J. Super. 571, 578 (App. Div. 1995) (citations omitted); see also R. 1:7-4(a) (requiring a court to "find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right, and also as required by R. 3:29"). "[T]he court must specifically review counsel's affidavit of services under R. 4:42-9, and make specific findings regarding the reasonableness of the legal services performed . . . ." F.S. v. L.D., 362 N.J. Super. 161, 170 (App. Div. 2003). "Without such findings it is impossible for an appellate court to perform its function of deciding whether the determination below is supported by substantial credible proof on the whole record." Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986). "The trial

judge may satisfy the court rules by relying on the facts or reasons advanced by a party; however, the court is obligated to make the fact of such reliance 'explicit.'" Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 301 (App. Div. 2009) (quoting Pressler, Current N.J. Court Rules, cmt. 1 on R. 1:7-4 (2009)).

The record contains no findings of fact or conclusions of law supporting the trial court's award of attorney's fees and costs to B.M. As a result, we cannot meaningfully review the trial court's decision. We are, therefore, constrained to vacate the award of attorney's fees and costs to B.M. and remand for a new determination of her application.

The October 22, 2018 judgment is affirmed in all respects except the award of attorney's fees and costs to B.M., which we vacate. We remand for a new determination of B.M.'s application for attorney's fees and costs. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1102-18T1