**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3890-18

IN THE MATTER OF THE
ESTATE OF ANN GRISCHUK,
Deceased.

_____

Submitted January 11, 2021 – Decided July 27, 2021

Before Judges Sabatino and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket P-250777-16.

Harwood Lloyd, LLC, attorneys for appellant/cross-respondent Michael David (David M. Repetto, of counsel and on the briefs).

Saul Ewing Arnstein & Lehr, LLP, attorneys for respondent/cross-appellant Olga Sweeney (Ronald P. Colicchio, on the briefs).

PER CURIAM

Plaintiff Michael David appeals from the Chancery Division's March 23, 2018 order dismissing with prejudice his complaint to set aside the last will and testament of his aunt, decedent Ann Grischuk, and the court's February 28, 2019

order to the extent it granted him attorney's fees and costs in an amount less than he sought. Defendant Olga Sweeney, decedent's sister and administrator of her estate, cross-appeals from the February 28, 2019 order, arguing that the court erred when it awarded Michael[1] any attorney's fees and costs and denied her cross-motion for sanctions against him for filing frivolous claims. We affirm.

I.

Decedent passed away on October 15, 2015. She was survived by Olga, Olga's daughter, Ann Sweeney, Michael, and another nephew, John David.

With the assistance of her longtime attorney, decedent drafted five wills over an eleven-year period. She executed her final will on July 21, 2015 (the 2015 Will). The 2015 Will was preceded by a will decedent executed in 2012, which included bequests to Michael of $250,000 and one third of the decedent's residuary estate (the 2012 Will). The 2015 Will increased the specific bequest to Michael to $275,000, but eliminated his interest in the residuary estate.

In 2016, Michael filed a complaint in the Chancery Division seeking to invalidate the 2015 Will. He alleged that decedent lacked testamentary capacity to execute the will and that Olga exercised undue influence over decedent to

---

[1] Because several people involved in this matter share last names, we refer to them by their first names. No disrespect is intended.

eliminate Michael's interest in the residuary estate. He requested that the 2012 Will be admitted to probate in place of the 2015 Will.

The trial court held a four-day bench trial, in which it heard testimony from Michael, Ann, John, the attorney who drafted the 2015 Will and was present when it was executed, decedent's physician, her longtime companion and caregiver, who witnessed decedent signing the will, the son of her caregiver, and an employee of a bank where decedent maintained an account.

On March 23, 2018, the trial court issued a written opinion in which it found that decedent had testamentary capacity when she executed the 2015 Will. The court concluded that Michael's testamentary capacity claim was based only on his subjective opinion that decedent was in failing health when she executed the will. The court found that Michael's opinion was contradicted by decedent's medical records and the testimony of her physician, who stated that decedent was in full control of her faculties during an examination on the day that she executed the 2015 Will. As the court explained,

> [a]ll of the medical records in evidence confirm that Ms. Grischuk was under no mental incapacity at any time until her death. The impression conveyed by all of the testimony and documents admitted into evidence to this [c]ourt is that Ms. Grischuk was at all times mentally competent and fiercely independent. The record is devoid of any evidence that Ms. Grischuk would or did follow either her sister's, or anyone else's

3

dictates, with regard to the 2015 Will, or virtually anything else.

The court also concluded that Michael had not proven Olga exerted undue influence on decedent when she executed the 2015 Will. Relying on the testimony of decedent's attorney, the court found that

> [e]ach and every provision of the 2015 Will was directed by Ms. Grischuk, who clearly and cogently understood them, and independently confirmed to her attorney that this Will represented her wishes. [The attorney] sat with Ms. Grischuk in a private room in her home, with the door to the room closed, and went through the 2015 Will with her line by line. He then went to the dining room to have it executed in front of the witnesses.

The court found that although Olga was present when decedent met with her attorney before executing the will, she neither spoke to decedent or her attorney about its contents or to anyone else to indirectly influence decedent's bequests.

The court found that Olga and decedent "maintained a close, and likely confidential relationship," shared a joint bank account, and had both been represented by the attorney who drafted the 2015 Will, and that one could reasonably conclude that suspicious circumstances surrounded decedent's change to Michael bequests. The court concluded, however, that Michael's claim of undue influence "must be rejected when looked at in the context of this case" because "[t]he facts simply are lacking to prove that [Olga] dominated Ms.

4

Grischuk in any way or that Ms. Grischuk relied on [Olga] to make any decisions on her behalf."  The court found that decedent

> made all of her financial decisions and continued to pay her own bills until her death . . . .  Although Olga . . . had written checks on the joint account she held with Ms. Grischuk, these were all at Ms. Grischuk's direction and for Ms. Grischuk's convenience.  [Olga] made no financial decisions on behalf of Ms. Grischuk nor did she benefit from any of her activities undertaken on Ms. Grischuk's behalf.

Finally, the court found "[t]he fact that the specific bequest to [Michael] is greater in the 2015 Will than in prior wills, leads this [c]ourt to the inescapable conclusion that Ms. Grischuk did not succumb to any outside influences to reduce or eliminate him from her estate.  In fact, given the costs of her later years, she may well have increased his specific bequest to more equitably allocate all of her dwindling assets in her residuary estate to his benefit."

On March 23, 2018, the court entered an order dismissing Michael's complaint with prejudice and finding the 2015 Will, which had been admitted to probate, was "in all respects valid and binding . . . ."

On April 19, 2018, Michael filed a motion seeking an award of attorney's fees and costs from the estate pursuant to Rule 4:42-9(a)(3).  Olga opposed the motion and cross-moved for sanctions against Michael pursuant to N.J.S.A. 2A:15-59.1(a) and Rule 1:4-8 for having filed frivolous claims.

On February 28, 2019, the court issued an order awarding Michael $84,030 in attorney's fees and $5,350.91 in costs and denying Olga's motion for sanctions.  In a written statement of reasons, the court concluded that Michael had reasonable cause to file his complaint based on information then in his possession.  The court concluded, however, that Olga's discovery responses made clear that Michael's claims were baseless and he should not have proceeded to trial.  As a result, the court awarded Michael only those attorney's fees and costs related to the testamentary capacity claim up to the point of his receipt of decedent's medical records and on the undue influence claim up to the last deposition of a trial witness.  The court awarded Michael no attorney's fees or costs related to trial preparation after August 12, 2017 or for trial.

The entirety of the court's findings of fact and conclusions of law with respect to the amount of attorney's fees and costs awarded to Michael was:

> The [c]ourt, having reviewed all of the services provided, and finding the time spent and rates reasonable per the [Rules of Professional Conduct], awards the petitioner the sum of $89,380.91 in fees and costs.

The court made no findings of fact and conclusions of law with respect to Olga's motion for sanctions.

A-3890-18

The parties cross-moved for reconsideration of the February 28, 2019 order. On April 8, 2019, the court entered an order denying the motions and staying the fee award.[2]

Michael raises the following arguments on appeal.

POINT I

THE TRIAL COURT'S LEGAL CONCLUSIONS ARE NOT ENTITLED TO ANY SPECIAL DEFERENCE AND SHOULD BE REVERSED.

POINT II

THE TRIAL COURT ERRONEOUSLY FOUND THAT THE DECEDENT HAD THE CAPACITY NECESSARY TO EXECUTE THE 2015 WILL.

POINT III

THE TRIAL COURT FAILED TO RECOGNIZE THAT THE 2015 WILL WAS A PRODUCT OF UNDUE INFLUENCE BY DEFENDANT OVER THE DECEDENT.

POINT IV

THE COURT PROPERLY GRANTED PLAINTIFF'S COUNSEL FEE APPLICATION.

---

[2] Each party filed a notice of appeal that included the April 8, 2019 order. They failed, however, to address the denial of their reconsideration motions in their merits briefs. Their appeals of the April 8, 2019 order, therefore, are deemed waived. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011); Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2021).

A-3890-18

Olga raises the following arguments in her cross-appeal.

POINT I[3]

PLAINTIFF'S CLAIM WAS WEAK AND MERETRICIOUS AND HIS FEE APPLICATION SHOULD HAVE BEEN DENIED IN ITS ENTIRETY.

POINT II

PLAINTIFF SHOULD BE SANCTIONED FOR FILING AND MAINTAINING THIS ACTION IN BAD FAITH.

II.

Our review of a trial court's findings in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice. . . ." Ibid. (quoting In re Tr. Created By Agreement Dated Dec. 20, 1961, 194 N.J. 276, 284 (2008)).

"[T]he findings of the trial court on the issues of testamentary capacity and undue influence, though not controlling, are entitled to great weight since

---

[3] We modify the numbering of Olga's point headings to reflect only those arguments raised in her cross-appeal.

the trial court had the opportunity of seeing and hearing the witnesses and forming an opinion as to the credibility of their testimony." In re Will of Liebl, 260 N.J. Super. 519, 523 (App. Div. 1992) (quoting In re Livingston's Will, 5 N.J. 65, 78 (1950)).

As a general principle, "a very low degree of mental capacity" is required to execute a will. Id. at 524 (quoting In re Rasnick, 77 N.J. Super. 380, 394 (Cty. Ct. 1962)). To determine whether a testator had capacity, courts must consider if she was able to "comprehend the property [she was] about to dispose of; the natural objects of [her] bounty; the meaning of the business in which [she was] engaged; the relation of each of these factors to the others, and the distribution that is made by the will." Livingston's Will, 5 N.J. at 73. Capacity is tested at the time of execution of the will. Id. at 76.

Decedent is presumed to have been of sound mind and competent when she executed the 2015 Will. Haynes v. First Nat'l Bank, 87 N.J. 163, 175-76 (1981). "[T]he burden of establishing a lack of testamentary capacity is upon the one who challenges its existence . . . [and] must be [proven] by clear and convincing evidence." In re Estate of Hoover, 21 N.J. Super. 323, 325 (App. Div. 1952).

A-3890-18

Michael argues that the trial court erred in rejecting his allegations of testamentary incapacity because it ignored medical records establishing that decedent suffered from anxiety and depression and was in a weakened state at the time she executed the will. He also argues that the court overlooked testimony from decedent's caregiver regarding her physical and mental state.

Our careful review of the record, however, reveals sufficient competent and credible evidence supporting the trial court's decision. The record is replete with evidence that decedent was mentally sharp, and making reasoned, fully informed decisions at the time she executed the 2015 Will. The attorney who prepared the will and was present when it was signed had no doubt of decedent's capacity and understanding of its terms. In addition, decedent's physician testified that she was of sound mind during a medical exam on the morning she executed the will. Michael produced no expert report to the contrary.

We reach the same conclusion with respect to the trial court's finding that Michael did not prove his claim of undue influence. "[U]ndue influence is a mental, moral, or physical exertion of a kind and quality that destroys the free will of the testator by preventing that person from following the dictates of his or her own mind as it relates to the disposition of assets . . . ." In re Estate of Folcher, 224 N.J. 496, 512 (2016) (alteration in original) (quoting In re Estate

of Stockdale, 196 N.J. 275, 302-03 (2008)).  Not all influence is "undue."  Mere persuasion, suggestions, or the opportunity to exert influence over a testator are not sufficient to invalidate a will.  Livingston's Will, 5 N.J. at 73.

A party contesting the validity of a will has the burden of proving undue influence.  Stockdale, 196 N.J. at 303.  However, "if the will benefits one who stood in a confidential relationship to the testator and if there are additional 'suspicious' circumstances, the burden shifts to the party who stood in that relationship to the testator."  Ibid.  The trial court found a confidential relationship between decedent and Olga and a suggestion of suspicious circumstances.  It concluded, however, that the suspicion was dispelled by proof of decedent's independent and informed decision to execute the will.

As the court noted, decedent changed her will many times between 2005 and 2015, and in each iteration she named Olga, who was in daily contact with decedent and assisted her with medical appointments, banking, and other tasks, as a beneficiary.  The 2012 Will, which Michael seeks to have admitted to probate, makes a sizeable bequest to Olga.  The record contains no evidence that Olga pressured decedent to execute the 2015 Will or to alter her bequests to Michael.  While Olga played an important part in decedent's life, Michael produced no proof that she unduly influenced her sister's decision making.

A-3890-18

We have considered Michael's arguments regarding the trial court's decisions with respect to the admission of evidence, the scope of discovery, and the management of witness testimony and conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

## III.

"The decision to award or deny . . . attorney's fees rests within the sound discretion of the trial court."  Maudsley v. State, 357 N.J. Super. 560, 590 (App. Div. 2003).  "[F]ee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion."  Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

"New Jersey follows the American Rule, which requires that parties bear their own counsel fees except in the few situations specifically permitted by statute or by our Supreme Court."  In re Farnkopf, 363 N.J. Super. 382, 395 (App. Div. 2003).  Rule 4:42-9(a)(3) permits the court to award counsel fees in probate actions to be paid out of the estate if the contestant had reasonable cause for contesting the validity of the will.  "To satisfy the rule's 'reasonable cause' requirement, those petitioning for an award of counsel fees must provide the court with a 'factual background reasonably justifying the inquiry as to the

testamentary sufficiency of the instrument by the legal process.'" In re Probate of Will & Codicil of Macool, 416 N.J. Super. 298, 313 (App. Div. 2010) (quoting In re Caruso, 18 N.J. 26, 35 (1955)).

In calculating the amount of reasonable attorney's fees, "an affidavit of services addressing the factors enumerated by RPC 1.5(a)" is required. R. 4:42-9(b); Twp. of W. Orange v. 769 Assocs., LLC, 198 N.J. 529, 542 (2009). RPC 1.5(a) sets forth the factors to be considered:

> (a)   A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1)   the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2)   the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3)   the fee customarily charged in the locality for similar legal services;
>
> (4)   the amount involved and the results obtained;
>
> (5)   the time limitations imposed by the client or by the circumstances;
>
> (6)   the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

Courts determine the "lodestar," defined as the "number of hours reasonably expended" by the attorney, "multiplied by a reasonable hourly rate." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (citing Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21 (2004)). "The court must not include excessive and unnecessary hours spent on the case in calculating the lodestar." Furst, 182 N.J. at 22 (citing Rendine, 141 N.J. at 335-36).

"The amount of attorney fees usually rests within the discretion of the trial judge, but the reasons for the exercising of that discretion should be clearly stated." Khoudary v. Salem Cty. Bd. of Soc. Servs., 281 N.J. Super. 571, 578 (App. Div. 1995) (citations omitted); see also R. 1:7-4(a) (requiring a court to "find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right, and also as required by R. 3:29"). "[T]he court must specifically review counsel's affidavit of services under R. 4:42-9, and make specific findings regarding the reasonableness of the legal services performed . . . ." F.S. v. L.D., 362 N.J. Super. 161, 170 (App. Div. 2003). "Without such findings it is impossible for an appellate court to perform its function of deciding whether the

14

determination below is supported by substantial credible proof on the whole record." Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986). "The trial judge may satisfy the court rules by relying on the facts or reasons advanced by a party; however, the court is obligated to make the fact of such reliance 'explicit.'" Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 301 (App. Div. 2009) (quoting Pressler, Current N.J. Court Rules, cmt. 1 on R. 1:7-4 (2009)).

Olga argues that the trial court erred when it granted any attorney's fees or costs to Michael. She contends he never had reasonable cause to pursue either the lack of capacity or undue influence claims. She also argues that the trial court made erroneous findings of fact – that Olga was present when the 2015 Will was prepared, that she transported decedent to her attorney's office to execute the 2015 Will, and that she expressed her desire that Ann receive a greater share of decedent's estate than Michael – when it concluded Michael had reasonable cause to pursue his claims. In addition, Olga argues that if the court was justified in granting Michael pretrial attorney's fees and costs, it failed to explain how it determined the amount of fees and costs it awarded to him.

Michael, on the other hand, argues that the trial court erred by limiting the award of attorney's fees and costs to pretrial proceedings. He contends that he had reasonable cause to pursue his challenge to the 2015 Will through trial.

We have carefully reviewed the record and conclude that the court acted within its discretion when it awarded attorney's fees and costs to Michael and when it limited those fees and costs to pretrial proceedings. There is sufficient support in the record for the court's conclusion that Michael had reasonable cause to allege his testamentary capacity claim until he received decedent's medical records and to pursue his undue influence claim until the close of discovery. We, therefore, reject Michael's argument that the court should have awarded him the entire amount of attorney's fees and costs he sought, as well as Olga's argument that the trial court erred by not denying Michael's request for attorney's fees and costs in its entirety.

We agree, however, with Olga's argument that the trial court's decision awarding attorney's fees and costs to Michael is lacking in precision. The court did not identify the date on which Michael received decedent's medical records or explain in any detail the attorney's fees and costs sought by Michael, but disallowed. In addition, the court issued only a conclusory statement that the time spent by Michael's attorneys and the hours they expended were reasonable.

We are cognizant of the fact that a remand to allow the trial court to further explain how it calculated the amount of fees and costs awarded to Michael would result in additional expenses which would further deplete what appears to be a

16

relatively modest residuary estate. In addition, the judge who issued the February 28, 2019 order has retired, necessitating the expenditure of additional judicial resources and attorney time to familiarize another judge with the record.

In light of these unusual circumstances, rather than ordering a remand we have undertaken an independent review of Michael's application for attorney's fees and costs. Olga does not dispute the reasonableness of the hourly rates of Michael's attorneys. Nor does she identify any specific services or costs that she contends should be disallowed. Michael sought $196,295 in attorney's fees and $7,673.65 in costs. The court awarded $84,030 in attorney's fees and $5,350.91 in costs. These amounts, about forty-two percent of the fees and seventy percent of the costs sought, approximate the services and costs incurred through the end of discovery and prior to a period of concentrated trial preparation. We conclude that the amount of fees and costs awarded reflects an equitable exercise of the trial court's discretion in light of the record, Michael's lack of success, and the court's conclusions regarding reasonable cause.

IV.

We turn to Olga's argument that the trial court erred when it denied her motion for sanctions. Rule 1:4-8 provides for the imposition of sanctions where an attorney files a frivolous pleading or a motion. "For purposes of imposing

17

sanctions under <u>Rule</u> 1:4-8, an assertion is deemed 'frivolous' when 'no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable.'" <u>United Hearts, LLC v. Zahabian</u>, 407 N.J. Super. 379, 389 (App. Div. 2009) (quoting <u>First Atl. Fed. Credit Union v. Perez</u>, 391 N.J. Super. 419, 432 (App. Div. 2007)). Therefore, "[w]here a party has reasonable and good faith belief in the merit of the cause," a motion for sanctions will be denied. <u>Perez</u>, 391 N.J. Super. at 432.

We review the trial court's decision on a motion for frivolous lawsuit sanctions for an abuse of discretion. <u>McDaniel v. Man Wai Lee</u>, 419 N.J. Super. 482, 498 (App. Div. 2011). Reversal is warranted "only if [the decision] 'was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" <u>Ibid.</u> (quoting <u>Masone v. Levine</u>, 382 N.J. Super. 181, 193 (App. Div. 2005)).

Although the trial court did not issue findings of fact and conclusions of law addressing Olga's motion for sanctions, it found that Michael had reasonable cause to file his complaint and to pursue his claims through discovery. Implicit in those findings is the conclusion that Michael's complaint was not frivolous. In addition, while we agree with the trial court's finding that the denial of

18

attorney's fees and costs for the post-discovery period was warranted because of the information disclosed to Michael during discovery, that conclusion does not equate to a finding that sanctions for pursuing frivolous claims after discovery were warranted. The trial court's limitation on the award of attorney's fees and costs was sufficient to resolve Olga's claims that Michael's pursuit of a trial was wrongful.

Affirmed. The stay of the fee award in the trial court's April 8, 2019 order is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION